# STATE EX REL. WILSON AND WAKEMAN *v.* SHIVELY.

STATE NOT TO BE MADE A PARTY TO ACTIONS OR SUITS BETWEEN PRIVATE PARTIES.—When a remedy is provided, either at law or in equity, complete and adequate, by which matters in dispute between private parties may be adjusted and settled, that remedy must be pursued by them. The state cannot lend the power of its name, or assume the cause of one private citizen against another, for the purpose of settling rights or titles in controversy between them.

APPEAL from Clatsop County.

*Sidney Dell*, for appellants.

*Wm. Strong & Sons*, for respondents.

By the Court, LORD, J.

The object of this suit is to have decreed the legal title, held by the defendant, J. W. Shively, to block 11 in the

city of Astoria, to be in the relators—to have the state patent to block 139, which was tide lands, and alleged to have been procured by fraudulent representations, from the state, by the said Shively, cancelled and annulled, and to compel a conveyance of the title held under the patent by the defendant Shively to the relators. From this statement of the objects of the suit, it is manifest that all the rights of the relators are purely equitable, and of equitable cognizance only. And the question which confronts us at the threshold of our inquiry, is the right of the relators to carry on a litigation in the name of the state for the objects sought by the suit, and the authority of the court, in a case so constituted, to adjudicate upon it. For it will hardly be asserted, if the subject matter of the litigation concerns the rights of private parties only and exclusively, and the state has no direct interest in the prosecution or result of the suit, that state interference in such controversies ought not to be countenanced, or tolerated, either directly or upon the relation of private parties. When a remedy is provided, either at law or in equity, complete and adequate, by which matters in dispute between private parties may be adjusted and settled, that remedy must be pursued by them; the state cannot lend the power of its name, or invidiously assume and champion the cause of one private citizen against another for the purpose of settling rights or titles in controversy between them, when each and all citizens are equally entitled to its protection. To understand what relation the state bears to this suit, or what interest it has in it, and the necessity of state interference in the protection of the state's rights, it is necessary to examine the facts, and ascertain the nature or composition of the claim upon which the state has assumed to base its right of interference in the subject matter of the litigation.

In 1844, the defendant Shively surveyed and laid out the town of Astoria, in which block 11 was included. At that time, the land claim upon which the said town of Astoria was laid out, was in the joint occupancy of the said Shively and one Welch. In April, 1845, the said Welch executed to the defendant Shivley a power of attorney to bargain and sell any lot or lots owned by the said Welch and Shively jointly in the town of Astoria, and that pursuant to said power of attorney, the said Shively did, for himself, and as attorney in fact for the said Welch, on the 3d day of June, 1845, execute to one General John Wilson, a deed of conveyance to said block 11. On the 24th day of January, 1866, a patent from the United States was issued for all of said lands so originally and jointly occupied and possessed by the said Shively and Welch, to the said Shively, and Susan, his wife, the west half thereof, embracing said block 11, being set off in said patent to the said Susan Shively. That on the 7th day of March, 1871, the said Shively and Susan, his wife, conveyed said block 11 to one Milton Elliott for a division and settlement, and on March 8, 1871, the said Elliott conveyed said block 11 to said John M. Shively, whereby it is claimed that the title to said block 11 inured to the benefit of the said John Wilson. Subsequently John Wilson died, and the relators are his heirs. Upon this state of facts, let it be conceded that the relators are the owners of the equitable title, and that Shively holds the legal title in trust for them, and that the relators would be entitled in equity, upon a proper showing, to a decree transferring the legal title from Shively to them (*Wilson* v. *McEwan*, 7 Or., 96; *Lamb* v. *Davenport*, 1 Sawyer, 609; *Parker* v. *Rogers*, 8 Or., 188) what possible ground do these facts exhibit which would authorize state intervention as a party to the proceeding. The state cannot lay

hold of these facts as its own, or acquire an interest in them upon the relation of private parties claiming to be aggrieved, and make them the basis of a claim or right for the state to invoke the jurisdiction of equity to compel the transfer of the legal title to the equitable owners. No right of the state is affected, either directly or indirectly, nor is any matter of public concern involved, by which, under particular circumstances, a right of action or suit exists in the state, or the state is authorized or induced to act as a party, or upon the relation of some private person for the enforcement or protection of such public interest. The matter, exhibited by the facts, is wholly and entirely a controversy between private individuals, for which a complete and adequate remedy exists in equity, in a suit between them. And whatever equity exists in these facts in favor of the relators which would make Shively a trustee of the legal title of block 11 for their benefit, that equity is to be enforced by a proper proceeding in equity by them against Shively, by which the legal title to block 11 would be transferred from Shively to the relators. To this point, the case as thus constituted by the facts, furnishes no authority for the proposition that the state, on its own behalf, or upon the relation of private parties, can sue in equity to compel a transfer of the legal title from Shivley to the relators. To work out that end is the exclusive business of the relators, and not of the state, who is not a real party in interest in any aspect of the case.

But the object of securing and the essentiality of the legal title of this block to the relators, will become more apparent in the consideration of the next matter for which relief is prayed in this suit, viz: to have the state patent to block 139, which is tide lands, and alleged to have been procured by fraudulent representations from the state by

Shively, cancelled and annulled, and to compel a convey-
ance of the title held under the patent by Shively to the
relators. The statute of 1874 (p. 77) provides that "the
owner or owners of any land abutting or fronting upon, or
bounded by the shore of the Pacific ocean, or of any bay,
harbor or inlet of the same, and rivers and their bays in
which the tide ebbs and flows, within this state, shall have
the right to purchase all the tide land belonging to this
state in front of the lands so owned." The situation of the
property is in this wise: Block 11 is situated on the banks
of the Columbia river, and block 139, which is tide land,
lies immediately in front of it. It is alleged in substance
that said block 11 abuts and fronts upon the shore of said
river at ordinary high tides, and extends the whole width
of the tide land embraced in block 139; that the said Shive-
ly, well knowing the title of the said John Wilson—the
ancestor of the relators—in block 11, and without any no-
tice whatever, as required by law, to him, in May, 1876,
made application to the board of school land commissioners
for the purchase of said tide lands in front of block 11, in
which is included block 139, and in which he fraudulently
concealed the fact of the title and ownership of the said
Wilson, and by means of fraudulent suggestion of title in
himself, and fraudulent concealment of the title of said
Wilson, procured to be issued to him the state patent to said
tide land included in block 139, wherefore the relators claim
that said patent to said tide land ought to be cancelled and
annulled, and the fee to the same decreed to be in the re-
lators.

At the outset, let it be noted that the object of the suit
at this state of the proceeding is not to annul the patent to
reinvest the title in the state of the tide lands in question,
in order that thereafter the state may sell it to the adjacent

owners of blocks abutting or fronting it, but to annul or vacate it, and declare the fee in it to the relators. It is therefore essential to the relators to have the legal title to block 11 declared in them, for it is only as owners—legal owners we apprehend—they are entitled to avail themselves of the provisions of the act of 1874 to purchase the tide lands adjacent to said block 11. As before observed, it is conceded for the purposes of the case, that they are the equitable owners of that block, the legal title being in the defendant Shively; but to transfer that legal title out of him into the relators, so as to make such title available for the purpose of acquiring the tide lands in dispute under the statute of 1874, can only be accomplished through the instrumentality of a decree obtained in a suit by the relators against Shively. It thus appears that all the rights of the relators which are sought to be maintained and secured by this suit are equitable. The board of school land commissioners, among other duties imposed upon them by law, are authorized to sell to the owner or owners, of any land abutting or fronting, &c., and such owner or owners, have the right to purchase all the tide lands belonging to the state in front of the lands so owned. In the exercise of the functions confided to them, it does not include any equitable power or authority. When, by means of an application, the fact is made to appear that a party is the owner of land bounded by tide lands, his right to purchase such tide lands under the act is invested, and the duty of the board is to issue the patent to such tide lands. It cannot inquire into any equities which may exist—that jurisdiction is confided to courts of equity—they act upon the application, and the proofs supporting it, showing the applicant to be the owner, and when satisfied of this fact, issue the patent to him for the tide lands abutting his property. But a patent to tide

lands procured by fraudulent suggestions, or the conceal-
ment of material facts, may be cancelled and vacated.    The
code provides that an action at law may be maintained in
the name of the state for the purpose of vacating or annul-
ling letters patent, issued by the state, against the person
to whom the same was issued, or those claiming under him
as to the subject matter thereof, in the following cases:    1.
When such letters patent were. issued by means of some
fraudulent suggestion, or the concealment of a material fact,
by the person to whom the same were issued, or with his
knowledge and consent, or, &c.    (Code, sec. 355.)    By the
code of procedure, the writ of *scire facias*, &c., are abolished,
and the remedies heretofore obtainable in these forms may
be obtained by civil actions under the provisions of title 5,
chap. 4, sec. 351.    It·is only the form, however, that is ab-
rogated.    " The jurisdiction and power of the courts are
not touched by that section, even if they could be by legis-
lation; nor the right to seek and reach through them all the
remedy that writ of *scire facias* once afforded."    (*People
ex rel. Hazel et al.* v. *Hall*, 80 N. Y., 119; *People ex rel.*
v. *Thatcher*, 52 N. Y., 528, 529.)    The object of the action
is "for the purpose of vacating or annulling such letters
patent," that the state may reinvest itself with the title to
the thing, or lands, improperly granted.    And it may be,
under the broad language used in the latter part of section
357, that such action may be maintained in the name of
the state upon the relation of a private party, when some
claim or right of such private party is involved, upon giv-
ing satisfactory security to indemnify the state for costs and
expenses.    A patent for tide lands issued by the state
to one who was not the owner of the adjacent lands, would
be in derogation of the true owner's preferred rights to pur-
chase, and to enjoy the benefits of such tide lands, and he

would have an interest in the subject matter of the action, which was to annul such patent, and it is not perceived why he might not be conjoined in such action with the state as relator, to cancel and annul the patent which thus injuriously affects his rights.   But the case of the relators is different in the matter before us.   Their rights or interests in the tide lands depend upon the ownership of the adjacent lands; that ownership is in dispute, and is a controversy of purely a private character between them and Shively, in which the state has no interest, and to which it cannot be a party.   That ownership, too, needs first to be established, or adjudged in a suit between them as against Shively, before any rights of the relators exist in the adjacent tide lands, such as would authorize them to ask, in the name of the state, to cancel his patent.   Originally, the remedy to repeal letters patent was by the writ of *scire facias* sued out on the part of the government, or some one prosecuting in its name.   Being founded on some matter of record, it lies in chancery, for the patent, being enrolled, is a record of that court.   The power of the chancellor to cancel the king's letters patent under the great seal is considered the highest attribute of his jurisdiction, for the proceeding in a particular manner is derived from the great seal, and the end of the judgment is to recall the letters patent that they may be cancelled—the great seal taken off.   (Bacon's Abridgement, *scire facias;* 3 Blackstone's Commentaries, 261.)   When the patent is granted to the prejudice of the subject, the king's right is to permit him, on his petition, to use his name for the repeal of it by *scire facias* (Bacon's Ab., *idem;* 2 Saunders, note 72, t.; 3 Blackstone's Com., 261.)   The object of the action and the end of the judgment is to vacate the patent, that recalls, or reinvests the right or thing in the king, and removes the prejudice or in-

jury to the subject. It does not reach beyond this, nor extend to matters and things outside of and not included in the patent, only as such matters and things may be affected as an inevitable consequence of vacating the patent. Nor is it intended to determine rights or title to lands not included in the patent, and which must be settled by them. The patent must work a prejudice to some existing, determinate, legal right, to furnish a ground for the issuance of the writ. In addition to the remedy by *scire facias*, there is another by bill on the equity side of the court of chancery. (*Jackson* v. *Lawrence*, 10 Johns., 23.)

It seems, in England, in chancery, there are two courts. The ordinary, where the chancellor or keeper proceeds according to the *common law*—and it was out of that court that the writ of *scire facias* issued, and in that court all the proceedings were had upon such writs (2 Com. Dig., tit. Chancery C. 1; 1 Daniels' Chancery Pleading and Practice.) The other was a court of equity, the proceeding in which was by English bill. The false suggestion for which the king might have a *scire facias* to repeal his own letters patent, must appear upon the face of the patent, otherwise the letters patent must be vacated upon a bill in equity. (*Attorney General* v. *Vernon*, 1 Vern., 277, 281, 283.) In this case last cited, the proceeding was upon information of the attorney general to repeal letters patent to crown lands which the defendant had obtained by surprise and false representation, and the object of the suit was to annul the patent that the state might reinvest itself with the title to the lands improperly granted. And the same end was sought in the action brought under the code of procedure in the case of *The People* v. *Clark*, 9 N. Y., 364; cited by counsel for relator, in which the court say: " It is true it is not technically an action to recover the possession of land. It

merely seeks to annul the only title which the defendant has to the premises patented, and the only effect, if the plaintiffs prevail, will be that the land will belong to the state in its political and sovereign capacity as owner of all the ungranted lands, and the commissioners of the land office will be bound to sell it to any one who will offer a fair price."

In England, when the suit immediately concerns the rights and interests of the crown, the public officer sues in his own official name without uniting that of any other person. But when the suit does not immediately concern the rights and interests of the crown, but only those who partake of its prerogative or are under its peculiar protection, the officer sues at the relation of some person who is styled as relator in the bill, and who becomes thereby responsible for the costs. It sometimes happens that the relator has an interest in the matter in dispute in connection with the crown, of the injury to which he is entitled to complain. In such case, his personal complaint is joined to and incorporated with the information given to the court by the officer of the crown, and then they form together an information and bill, and are so termed. (Story Eq. Pleading, sec. 8; 1 Daniel's Chancery Practice, 10.) And this is the position now assumed by counsel for the relators in a supplemental brief filed since the argument, in which he insists that the facts make it a bill and information under what he conceives to be the equity of sec. 355, *supra.* Taken as an information and bill, it is not perceived how the case is to be aided by that view. The first ground of the complaint, upon the successful establishment of which all subsequent matter or claim is based, involves no facts upon which an information can be founded. It is wholly and exclusively a matter of private right in dispute between

private individuals, which can be settled by a suit between them, in which the state has no interest, or right to interfere, and ought not to be allowed to intrude with its name and the influence of its officers to assist one citizen in the prosecution of a private right as against another. Block 11 is not land patented from the state, or which the state ever owned, or in which it has any interest whatever. It is land to which Shively has the legal title, and to which the relators claim the equitable title, which Shively denies, and conceding to the relators the rights they claim, it is not the duty or right of the state to interfere or to establish such claim, but the duty and business of the relators solely. Although, thus far we have only been considering the matter alleged by the state at the relation of the relators, the record discloses that the defendants not only deny the equitable rights of the relators to block 11, but deny that it is adjacent to the tide lands in question, and set up as a separate defense that other lands owned by the defendants intervene between block 11 and block 139, which are bounded by the ordinary high tides, and which are adjacent to block 139. So that the state is engaged through its officers, not only in assisting to establish the private ownership of the relators to block 11 as against Shively, but in the further task of establishing that block 11 is adjacent to the tide lands in question, to fix some right or interest of the relators to such tide lands, and the inevitable consequence of litigating the existence and title of Shively to the intervening land, claimed to be adjacent to block 139, not simply to annul the patent to block 139, but to decree the title of the same in the relators. It seems to us in facts thus constituted, in the irrelation of the state to them, and in the consequences to be apprehended from such state interference, are objections of too serious a character to maintain this suit. The

complaint is dismissed, and the judgment of the court below is modified in accordance with this opinion without prejudice.