JAMES W. LYNCH AND THE PONCA CITY LAND AND IMPROVEMENT COMPANY V. THE UNITED STATES *et al.*

(Filed September 10, 1903.)

1. PATENT—Petition to Annul. A petition by the United States to annul a patent for fraud, must, under our code practice, contain all the material averments necessary to constitute a good bill in equity under the chancery practice.

2. UNITED STATES—Rights as Litigant. The United States as suitor in a judicial tribunal, has no superior rights,. but is controlled by the same principles of law and rules of practice as one of her citizens.

3. PATENT—Suit to Annul, Causes for. The United States may maintain a suit in equity to cancel a patent for fraud in either of the following class of cases: First: Where the government being the only party interested, the patent is charged to have been obtained by fraud in representations or conduct. Second: Where the land by appropriate reservation is not subject to patent, but is nevertheless erroneously patented. Third: Where the land, though subject to patent, in the ordinary administration of the land office, is patented to the wrong person either through fraud or by reason of mistake or inadvertence.

4. SAME—Not Maintained, When. Although bribery and perjury may have been committed in procuring a patent to public land, a court of equity will not grant relief when the United States has not been injured, and will not be benefited, and owes no duty to any person having an interest or equity in the land in controversy.

5. SAME. Where one has made a homestead entry upon land and has subsequently made final proof and paid the United States ten dollars per acre for the land and obtained a patent, the same being the highest price for which the land could be sold under any existing law, and there being no adverse claimant to the land who has complied with such of the land laws as to give him an equitable claim to the land, the United States has no such interest as will warrant a court of equity in annulling the patent, although the patentee committed both bribery and perjury in obtaining title.

6. SAME. The United States will not wage a suit to cancel a patent

solely for the benefit of third persons, to whom she owes no duty to convey the land or protect it for them.

7. **SAME.** Where a patent has been issued to a homestead entryman for townsite purposes, and the land has been duly platted into lots, blocks, streets and alleys, dedicated to the public, and said townsite is actually used and occupied for purposes of trade and business, and a large number of the lots have been sold to divers innocent purchasers who are owners of and occupying the same, although the patentee obtained title through fraud and bribery, the patent cannot be cancelled without materially affecting the interests of the innocent holders, and the government is without remedy.

8. **SAME—Parties.** In a suit in equity to cancel a patent, every person having an interest in the land included in the patent is an indispensable party, and equity will not proceed until they are brought before the court.

(Syllabus by the Court.)

*Error from the District Court of Kay County; before Bayard T. Hainer, Trial Judge.*

*Hackney & Lafferty* and *James B. Diggs,* for plaintiffs in error.

*Horace Speed,* for defendants in error.

Opinion of the court by

BURFORD, C. J.: This is a suit by the United States to set aside a sale of land and cancel a patent issued by the United States. It is alleged that the defendant, James W. Lynch, made homestead entry upon the southwest quarter of section twenty-seven (27), township twenty-six (26) north, range two (2) east, in Kay county, Oklahoma. That he made final proof for townsite purposes, and obtained a patent. That he afterwards conveyed the entire tract to the defendant, The Ponca City Land and Improvement Company, an alleged corporation. It is further alleged that Lynch, by bribery and perjury, procured the officers of the land department to allow his homestead entry, over certain affidavits and protests, and to accept his final proof. That it was through said fraud, bribery and perjury that he obtained

the patent in controversy. It is further alleged that the so-called Ponca City Land and Improvement Company, the grantee, took said conveyance with full knowledge of the fraudulent acts of Lynch, and that they were not *bona fide* purchasers without notice. A number of specific allegations of fraud are made against Lynch and the Ponca City Land and Improvement Company, and others mentioned in the petition. To this petition as amended, the defendants filed separate demurrers, and the first question presented is the ruling of the trial court on these demurrers.

.While this pleading is, under our code, properly entitled a petition, yet it is in effect a bill in equity to rescind a contract for fraud, and cancel a patent. It must contain all the averments necessary under the chancery practice to constitute a showing entitling the petitioner to equitable relief. While the forms of actions and the style of pleadings at common law and in chancery have been abolished, and one form of action substituted by our code, the facts necessary to be pleaded in a case of this character are the same as before the adoption of the code. A court of equity will not administer equitable relief unless the petitioner shows a superior equity in himself, although it may appear that frauds and bribery have been practiced.

· The United States stands in no different relation as a suitor than any individual. When the government comes into a court to submit a question to judicial determination, she is not acting in her capacity as a sovereign, but ·as a litigant, claiming the same rights, and bound by the same rules as any of her citizens under similar circumstances. This was expressly held in *The United States v. The Bank*

*of Metropolis,* 15 Peters, 377; *Brent v. Bank of Washington,* 35 U. S. 596; *United States v. Hughes,* 11 How. 552; *United States v. Throckmorton,* 98 U. S. 61; *United States v. Miner,* 114 U. S. 223. Hence, in determining whether the petition alleges such equities in the United States as against the defendants as will warrant the court in cancelling a patent, we must look to the general rules of chancery pleading in equity cases, and in determining these rules, we need look only to the decisions of the supreme court of the United States, where every phase of the subject has been discussed and determined.

It is a well settled rule that a patent to public lands procured by fraud and perjury conveys the legal title to the patentee, and such patent is not void, but is voidable only. (*U. S. v. Minor,* 114 U. S. 233; *Colorado Coal Co. v. U. S.,* 123 U. S. 307.) It is also a settled principle that the equities of *bona fide* purchasers, who hold the legal title under the patent, are superior to those of the United States, and the plea of *bona fide* purchasers is an absolute defense to such suit. *Bona fide* purchasers are the especial favorites of courts of equity. (*Boone v. Chiles,* 10 Pet. 177; *U. S. v. Burlington & M. R. R.,* 98 U. S. 334; *Colorado Coal Co. v. U. S.,* 123 U. S. 307; *U. S. v. California Co.,* 148 U. S. 31; *U. S. v. Winona & St. P. R. R.,* 67 Fed. 948 [C. C. A.] )

Ordinarily equity will not cancel a contract or patent, although the same was obtained by fraud, bribery or perjury, unless the petitioner has suffered some injury, or can show some special ground of equitable relief, and the mere ground that the patent was procured by fraud is not sufficient. (*Insurance Co. v. Baily,* 13 Wall 616; *Kimball v. West,* 15 Wall 377; *Atlantic Delaine Co. v. James,* 94 U. S. 207.)

10—Vol 18

Even though the patentee may have resorted to fraud in procuring the patent, certain conditions must exist before the United States will interfere to cancel it, and one of the leading cases enunciating the rule in such cases is *U. S. v. San Jacinto Tin Co.,* 125 U. S. 286, where it was said:

"But we are of opinion that since the right of the government of the United States to institute such a suit depends upon the same general principles which would authorize a private citizen to apply to a court of justice for relief against an instrument obtained from him by fraud or deceit, or any of those other practices which are admitted to justify a court in granting relief, the government must show that, like the private individual, it has such an interest in the relief sought as entitles it to move in the matter. If it be a question of property, a case must be made in which the court can afford a remedy in regard to that property. If it be a question of fraud, which would render the instrument void, the fraud must operate to the prejudice of the United States, and if it is apparent that the suit is brought for the benefit of some third party, and that the United States has no pecuniary interest in the remedy sought, it is under no obligation to the party who will be benefited to sustain an action for its use. In short, if there does not appear any obligation on the part of the United States to the public or to any individual or any interest of its own, it can no more sustain such an action than any private person could under similar conditions. In all the decisions to which we have just referred, it is either expressed or implied that this interest or duty of the United States must exist as the foundation of the right of action. Of course, this interest must be made to appear in the progress of the proceedings, either by pleading or evidence, and if there is a want of it, and the fact is manifest that the suit has actually been brought for the benefit of some third person, and that no obligation to the

general public exists which requires the United States to bring it, then the suit must fail."

The same distinguished court said in the case of *U. S. v. Beebe,* 127 U. S. 342: "\* \* \* And it may now be accepted as settled that the United States can properly proceed by bill in equity to have a judicial decree of nullity and an order of cancellation of a patent issued in mistake, or obtained by fraud, where the government has a direct interest, or is under an obligation respecting the relief invoked. \* \* \* But if it should come to the knowledge of the government that a patent has been fraudulently obtained, and that such fraudulent patent, if allowed to stand, would work prejudice to the interest or rights of the United States, or would prevent the government from fulfilling an obligation incurred by it, either to the public or to an individual which personal litigation could not remedy, there would be an occasion which would make it the duty of the government to institute judicial proceedings to vacate such patent."

It is also held: "Where a patent has been fraudulently obtained, and such fraudulent patent, if allowed to stand, would work prejudice to the interests or rights of the United States or would prevent the government from fulfilling an obligation incurred by it, either to the public or to an individual which personal litigation could not remedy, there would be an occasion which would make it the duty of the government to institute judicial proceedings to vacate such patent." (*U. S. v. M., K. & T. Ry. Co.,* 141 U. S. 358; *San Pedro Co. v. U. S.,* 146 U. S. 120.)

There are a number of other cases decided by the same court involving similar questions, but the law as announced

in the cases cited fully covers, and is controlling, in the case at bar.

In the case of *U. S. v. The Bell Telephone Co.*, 167 U. S. 239, the court in reviewing the cases brought to cancel patents to lands, classified the cases into three groups, as follows:

"First. Where the government being the only party interested, the patent is charged to have been obtained by fraud in representations or conduct.

"Second. Where the land by appropriate reservation is not subject to patent, but is nevertheless erroneously patented.

"Third. Where the land, though subject to patent in the ordinary administration of the land office, is patented to the wrong person, either through fraud, or by reason of mistake or inadvertence."

The case under consideration must come within one of these general classes. Clearly it is not of the second class, because this land was subject to entry at the date it was entered by Lynch. Does it belong to the third class? This requires a more careful analysis of the petition. Unless such facts are pleaded as will show that some adverse claimant was entitled to this land at the time the patent was issued to Lynch, and had so far complied with the homestead or townsite law as to place upon the United States an obligation or duty to convey it to such person, and that it is prevented from performing this duty by reason of the fraudulent patent of Lynch, then the case does not belong to the third class. The question then arises, if Lynch was not entitled to this land at the date of his patent, who was? Does the petition show a valid adverse claim in any other person? We can better answer this question by a review of the allegations

of the petition on this subject. It is alleged, first: "That on or about the 18th day of September, 1893, a large number of persons qualified to settle upon and occupy lands under the townsite laws of the United States, did settle upon and occupy said described quarter section of land, to-wit: the southwest quarter of section 27, in township 26 north, range 2 east, of the Indian Meridian, in Kay county, Oklahoma Territory, for townsite purposes, and did occupy and improve the same for trade and business, and said parties and a large number of other settlers have ever since that time used and occupied said land for the purposes of trade and business as townsite settlers thereon. That with the knowledge that said quarter section of land was so settled upon and was being so used for townsite purposes, the said James W. Lynch did on or about the 30th day of January, 1894, fraudulently and corruptly by the use of money, to-wit: the payment of the sum of three hundred dollars to James E. Malone, the said register of the United States land office at Perry, Oklahoma Territory, make and procure his homestead entry to be entered of record in said land office on said tract of land." What duty is the United States under to these townsite settlers? If these persons desired to acquire title to this land, the law required of them that they should file an application to enter the land, accompanied by such proof, as would show that the land was actually used and occupied for purposes of trade and business, and a plat of said land showing the lots, blocks, streets and alleys, with proper reservations for public uses; they were also required to pay the United States $2.50 per acre for this tract, and at the proper time offer their final proof. Until they have performed these

requirements, or attempted in good faith to do so, the United States is under no obligation to them, and if Lynch's patent is canceled, there is no such showing made as that the townsite settlers would be entitled to a patent. They have paid nothing for the land, nor have they offered anything. They have not taken any of the steps required by law to enable them to acquire title to the land. Under the allegations of this particular part of the petition, there was only two methods under the law whereby the title to this tract of land could be divested from the United States, viz: By allowing Lynch as the homestead entryman to purchase the land at $10 per acre for townsite purposes, and this was done, and it was evidently on account of these very settlers being occupants of the land that he was not only allowed, but in fact required, to make final proof for townsite purposes. Or, by procuring the proper trustee to apply to enter the land for a townsite, and requiring the occupants to pay the expense of entering and platting the land, as well as to pay $2.50 per acre for the land, to the United States. These settlers as such have no demands against the United States, either legal or equitable, and hence the United States is under no obligation to cancel the Lynch patent for their benefit. The United States does not attempt to enter the courts as a litigant for the benefit of some third party, unless the rights of such third party have in some way been defeated or prejudiced by the mistakes of its officers, induced by error or the fraud of an adverse claimant.

The next averment of an adverse claim set forth in the petition is as follows:

"Plaintiffs further say that among other settlers

on said tract of land was one J. S. Walton, who had made homestead settlement on said tract of land on or about the 16th day of September, 1893, and did thereafter claim said tract of land under the homestead law, and did in due time make application to enter the same under the homestead law, and was on or about the 14th day of March, 1894, claiming said land by virtue of his homestead settlement and application and right thereto, and that the said James W. Lynch, for the purpose of cheating and defrauding plaintiffs did, in violation of law, make and enter into a written contract with the said J. S. Walton, in consideration of his, Walton's, relinquishing his right to said tract of land by virtue of his homestead claim thereto, to give to said Walton the sum of twelve hundred dollars and one-tenth interest in the net proceeds of said land on the sale thereof by the said James W. Lynch."

If this be true, then certainly the United States is not prosecuting this suit in the interest of Mr. Walton; he has no homestead entry; he has not offered any final proof; he has never tendered any money or offered to purchase the land, and if he carried out his contract with Lynch, he relinquished all interest in the land prior to the time Lynch offered final proof.

The next adverse claim pleaded is as follows:

"These plaintiffs further say that thereafter and while the final proof of said James W. Lynch was pending before the land bureau of the interior department of the United States for approval, one John W. Parker, learning of the heretofore mentioned fraudulent conduct of the said James W. Lynch in making his entry by his agent, D. C. Prior, as aforesaid, by going into the Cherokee outlet before the time provided in the president's proclamation for the opening thereof, did file in the land bureau of the department of the interior, and with

the proper officers thereof, his affidavit supported by other good and sufficient affidavits, setting up the facts of the disqualification of said Lynch, and the fraud he was attempting to perpetrate, and did perpetrate upon plaintiffs, the United States, and for the purpose of cheating and defrauding plaintiffs and preventing a hearing upon said charges of fraud against the application of said James W. Lynch for a patent to said land, and against the reception and approval of his final proof, the said James W. Lynch proceeded to and did with and by the use of money corrupt and bribe the attorneys of said John W. Parker, and procure them to withdraw their aid and assistance as attorneys in behalf of their client, John W. Parker, and to proceed to assist the said James W. Lynch in the procurement of the approval of his final proof to said land, and the securing of his patent therefor, and thereby defeat and prevent a hearing upon said charges of fraud presented against the application of said James W. Lynch to enter said lands, and his final proof thereon."

At the time Parker made this protest, the land was covered by the homestead entry of Lynch, and he was in the act of making final proof for a townsite. The townsite occupants were on the land, and it was then being used for purposes of trade and business. Parker could have acquired no rights greater than that of a townsite settler, and it is not alleged that he was an occupant of the townsite. Had his protest been allowed, and had he prevailed, he could have acquired no right as a homestead claimant for the reason that the land was then segregated for townsite purposes by the settlement of the townsite occupants. His preference right as a contestant could not have been exercised, and the only result would have been to prove up the townsite through a trustee for the benefit of all the occupants,

rather than through the homestead entry of Lynch, as was done.

While the conduct attributed to Lynch is reprehensible in the highest degree, and of a character that no court will ever countenance, yet his deal with Parker or his attorneys is not an issue in this case, and if it all be true as alleged, it does not create any equity in Parker which he can enforce as against this land. Nor does it impose any obligation on the United States to cancel the patent for his benefit. The facts alleged do not show that Parker could even acquire a town lot if the patent is set aside. These embrace all the claimants mentioned in the petition as in any manner standing in the way of Lynch, and none of them sustain any such relations to the land in dispute as to bring this case within the third group or class of cases designated by the court in the *Bell Telephone Co.* case, *supra.*

So the case must be deemed to belong to the first group, and the sufficiency of the petition determined by the rules applicable to that class, viz: "Where the government being the only party interested, the patent is charged to have been obtained by fraud in representations or conduct." In this class of cases, a court of equity will furnish relief where the United States has been defrauded, her interests prejudiced, or to protect the general public from wrongful imposition. But if the United States has not been injured, and will not be benefited by the recision of the contract and cancellation of the patent, the court will not grant any relief. (*Wing et al. v. Woolfolk,* 116, U. S. 599.)

This case must be tried and tested by the rule stated in the *San Jacinto Tin Co.* case, *supra,* where it was said that

the United States can no more sustain an action to cancel a patent than can a private individual, if it is apparent that the United States has no pecuniary interest in the remedy sought, and is under no obligation to the party who will be benefited to sustain an action for his use, or that there is no obligation on the part of the United States to the public. It clearly appears from the petition that the only persons who will be benefited from this proceeding are the townsite occupants who are residing on the land, and by their failure to make the proper townsite application and tender the money for the land and follow the same to a final disposition, they have forfeited all their rights under the law, and it is well settled that equity will not aid one who has had a full and complete remedy at law, and has failed to avail himself of such remedy.

The United States owes these persons no duty or obligation, and equity will not favor them. It is clear that the United States has no pecuniary or property interests in this proceeding. Under the law as it existed at the time of Lynch's final proof, if he had made final proof as for homestead purposes, the United States would have received $2.50 per acre. If the townsite occupants had proved up through a trustee for townsite purposes, the price paid would have been the same, but under the law permitting a homestead entryman to make final proof for townsite purposes, the price was $10 per acre, and this was the law under which Lynch was required to make final proof, and the government has received and now has the highest cash price that said land can ever be sold for or could have been sold for under any law of the United States. Notwithstanding the fact he conceded that Lynch committed bribery, perjury and fraud

in procuring the title to the land in question, the United States has not suffered in purse or property, and cannot be placed in any better position if the patent be canceled. In fact, the United States will not and cannot be benefited by a cancellation of the Lynch patent. No person that the United States is under any obligation to in this relation will be benefited. If there were any homestead claimants who had rights superior to Lynch, they have failed to prosecute their rights to such a conclusion as will warrant the department in issuing a patent to them. It may be asserted as a general principle that the United States will not wage a suit to cancel a patent solely for the benefit of third persons, where they have not performed any conditions entitling them to any equitable or legal claim against the United States. In our opinion the petition does not show any equity in favor of the United States, and the demurrer should have been sustained.

In this connection we desire to say that if Lynch has committed the felonies charged, or if the register and receiver of the U. S. land office accepted bribes to influence their official action, the government should have prosecuted and secured the conviction of each of them. There are no crimes that are more destructive of public morals and of good government than those of bribery and perjury, and every man who gives or offers, and every officer who solicits or accepts a bribe, should be diligently sought out and adequately punished. But in the case under consideration, there are no facts averred to show that the results would not have been the same, and that Lynch would not have obtained the patent to this land had no bribery or perjury been committed.

It is also. contended that the petition is defective for the reason that the *bona fide* lot owners are not made parties defendant. It is averred in the petition that a large number of persons are townsite settlers upon said land and that they are residing upon and occupying the same for purposes of trade and business, both at the time Lynch made his homestead entry and at the time he made final proof. The defendants filed a motion stating that the land in dispute was platted into blocks, lots, streets and alleys, and was a part of a town, and that large portions of the land had been sold and. conveyed to *bona fide* purchasers who were residing upon and occupying the several lots purchased by them, and asking to have these several lot owners made parties defendant. The lot owners were indispensable parties to a suit in equity to annul the patent. (*U. S. v. W. & St. P. Ry.*, 67 Fed 948; *U. S. v. B. & M. Ry. Co.*, 98 U. S. 342; *Col. C. & I. Co. v. U. S.*, 123 U. S. 307; *U. S. v. C. & O. Land Co.*, 148 U. S. 41; *Bone v. Childs*, 35 U. S. 177.)

The government sought to avoid the effect of this rule by making an amendment to the petition by which it was specifically averred that the government demanded only the cancellation of the patent as to the portion of the tract yet remaining in Lynch, or in the Ponca City Land and Investment Company, and also specifically waived any claim to any of the lots on said tract held by any other persons that the defendants named in the petition. It has been held that a party may obviate the objection for want of a particular party by waiving the relief he is entitled to against such party, but this cannot be done to the prejudice of those who are parties. We are inclined to the opinion that this amend-

ment and waiver is fatal to the government's case.   The suit is one to cancel a patent to a quarter section of land; this patent is an instrument of solemn import, and it was said in the *United States v. Marshal,* 129 U. S. 579, that a patent is an instrument of such dignity and character that the holder of it cannot be called upon to prove that the necessary things have been done to entitle him to it.   But the one attacking it must show by conclusive proof beyond question, some of the proper grounds for defeating it.   The patent is a whole instrument, complete; it cannot be divided into parts; it evidences the act of the United States through her proper officers in conveying an entire tract of one hundred and sixty acres of land to the patentee.   Now, if this patent is void for fraud, it is void as a whole, and as to all the land; and if it is cancelled, it must be cancelled as a whole, and as to all.   This follows from necessity.   The laws which authorize the United States to dispose of the lands in question, only provide for two modes of disposing of the same, viz: For homestead purposes, or for townsite purposes.   In neither case does the law authorize an entry of less than forty acres.   These lands, it is admitted, are now used and occupied for townsite purposes, and the United States admits that a large number of lots have been sold and conveyed to innocent purchasers since the patent issued.   The patent cannot be cancelled as to them, and to cancel it as to the parts not sold, an undefined, undescribed number of town lots, which the United States has no authority under any existing law to sell or convey, would certainly not be doing equity to the people who are *bona fide* purchasers.   This tract has streets and alleys dedicated to the public; the *bona fide* holders of lots have an interest in these streets and alleys.   The

annulment of the patent as asked for by the United States would leave as public lands, subject to entry for townsite purposes, a large number of small tracts of land, many much less than one acre and vacate all streets and alleys to which these occupants now have no deeds. The United States after it has stood by and permitted the rights of others who have purchased from or through Lynch, to become superior to any equities existing in the United States, will not be permitted to bring about a condition which will result in confusion and uncertainty, and lead to certain litigation. Where part is valid and part invalid, and the same cannot be separated, the government must fail. (*U. S. v. B. & M. R. R. Co.*, 98 U. S. 334.)

Where a decree cannot be entered as to those before the court without necessarily affecting the parties who are not before the court, no decree will be entered. (*Home v. Lockhard*, 17 Wall. 579; *Conn et al. v. Penn*, 5 Wheat. 424; *Russell v. Clark*, 7 Cranch. 69; *Mallowe v. Hinde*, 12 Wheat. 193; *California v. So. Pac. Ry.* 157 U. S. 229; *McArthur v. Scott*, 113 U. S. 340; *Williams v. Bankhead*, 19 Wall. 563; *Robin v. R. R. Co.*, 16 Wall. 446.; *Caldwell v. Taggert*, 4 Pet. 190; *Bockfinger v. Foster et al.*, 10 Okla. 488.)

It is said in the last case cited:

"It is not enough that a court of equity causes nothing but the interest of the proper party to change owners; its decrees should terminate and not instigate litigation. Its sales should tempt men to sober investment, and not wild speculation. Its process should act upon known and definite interests, and not upon such as admit of no medium of estimation."

Under the peculiar conditions surrounding the plaintiff's

case, whenever the interests of subsequent *bona fide* purchasers were brought to the knowledge of the court, it was the duty of the court to order them made parties to the suit. The only defense the United States had, was to deny that they were innocent holders, and failing in this, the suit failed. When the United States by the confession made by its amendment, sought to save the rights of the innocent holders by the waiver of any demand for relief against them, it placed itself in the position where the court could enter no definite decree which would prove a benefit to the United States. The United States being in the position that it is not entitled to the cancellation of the patent, it is not in a position to ask any relief, and the petition should be dismissed.

The judgment of the district court of Kay county is reversed, and the cause dismissed for want of equity.

Hainer, J., who presided in the court below, not sitting; Gillette, J., absent; Burwell, J., concurs in the judgment in this case but not in all of the reasons given therefor; all the other Justices concurring.