Argued 23 January, decided 31 July and 21 November, 1906.

### OREGON v. WARNER STOCK CO.

86 Pac. 791, 87 Pac. 534.

PUBLIC LANDS—SETTLERS ON PUBLIC LANDS—RIGHTS ACQUIRED.

1. Persons who settled on vacant unsurveyed public lands of the government, not swamp lands, nor selected as swamp lands, nor otherwise reserved, with intent to acquire title under the pre-emption, homestead or timber culture laws of the United States, and filed on the lands under the government laws, did not acquire any rights under the state swamp land laws.

RIGHT OF STATE TO SUE—INTEREST OF PLAINTIFF.

2. A state, as well as an individual, must show some interest in the subject of litigation to be entitled to recognition by the courts.

This is illustrative: A state cannot maintain a suit to determine that persons claiming lands within its borders under the laws of the United

States are entitled thereto against other persons claiming under the state laws, without showing some present interest in the land.

SAME.

3. This is another illustration: A state cannot maintain a suit to cancel its patent to lands within its borders without showing some present interest in such lands.

SAME—COMPLAINT—SUFFICIENCY.

4. A complaint in a suit by a state, praying for a decree adjudging that persons who have settled on and claimed land under the pre-emption, homestead or timber culture laws are entitled thereto, in which it is alleged that the persons settled on vacant unsurveyed public lands, not swamp nor selected as swamp lands, nor otherwise reserved, with intent to acquire title under the pre-emption, homestead or timber culture laws, and that they filed on the lands under the federal laws, does not show any interest in the state in the lands essential to enable it to maintain the suit.

PLEADING—CONSTRUCTION OF ALLEGATIONS.

5. In pleadings the allegations should be direct and certain, as they will be construed generally against the pleader.

For instance: A charge that certain persons applied to purchase certain lands from the state as swamp lands, "having full notice and well knowing that none of the lands claimed was then or on the 12th day of March, 1860, swamp or overflowed land, but was then and on said 12th day of March, 1860, part of the bed of W. Lake and covered by the waters thereof," is a charge of belief on the part of the applicants, but not a charge as to the character and nature of the land itself.

APPEAL—DISPOSITION OF CAUSE AFTER AFFIRMANCE—REMANDMENTS.

6. Plaintiff brought suit for himself and others not connected with his interest, and, after the sustaining of a demurrer to his amended complaint, refused to plead further, whereupon the cause was dismissed. *Held,* that, the decree having been affirmed on appeal, the cause would not be remanded to permit plaintiff to apply for leave to amend by substituting a cause of action in his own favor only.

From Lake: HENRY L. BENSON, Judge.

Statement by MR. JUSTICE HAILEY.

The amended complaint in this case covers some 60 pages of the printed abstract and shows that this suit is brought for and on behalf of the State as plaintiff, by A. M. Crawford, Attorney-General, pursuant to the written request of the Govorner, and that defendant, the Warner Valley Stock Co., a private corporation, claims to be the owner, through mesne conveyances from the United States, of a large quantity of land in Lake County, Oregon, known as "swamp land," the title to which was derived under the swamp land acts of the United States and this State, which are referred to and numerous provisions thereof set out in the amended complaint. Defendant acquired title to certain of its lands through deeds from one

R. F. McConnaughy, who derived his title from the State through mesne conveyances under the state swamp land act, and acquired title to the remainder of its lands on June 23, 1899, by direct deed to it from the State, based upon an assignment to it by mesne conveyances of a certain certificate of purchase of swamp lands issued April 23, 1884, to H. C. Owen, as assignee of all rights to purchase such lands under an application made by one W. A. Owen and four others, who had assigned their rights to him, which original application had been made by them December 2, 1870. The original application for the McConnaughy lands was made December 6, 1876, and on October 31, 1882, another application, accompanied by proofs of reclamation, for a part of the lands embraced in the original application, was filed with the State Land Board, and on January 18, 1883, a deed was issued for such land to R. F. and Martin McConnaughy; the former afterward acquiring all interest of the latter therein. The plaintiff alleges fraud and various other matters tending to avoid the rights of the defendant and its predecessors in interest in procuring patents from the State and the United States to the lands involved, and charges defendant with knowledge of all matters alleged, and particularly alleges that the lands never were and are not swamp lands, and that on December 2, 1870, when W. A. Owen and his associates made their application, they did so,

"having full notice, and well knowing and believing, that none of the land thereafter settled upon or claimed under the preemption, homestead or timber culture laws of the United States, hereinafter described, by the persons hereinafter named, was then, or on the 12th day of March, 1860, swamp or overflowed land, but was then and on said 12th day of March, 1860, embraced within and part of the permanent bed of Lake Warner, and covered by the waters thereof."

Also, the plaintiff charges and claims that on December 6, 1876, when the McConnaughys made their application to purchase, they did so,

"having full notice and well knowing and believing that none of said land so settled upon, or claimed under the pre-emption, homestead or timber culture laws of the United States, herein-

before mentioned and hereinafter described, was then, or on the 12th day of March, 1860, included within and part of the permanent bed of Lake Warner and covered by the waters thereof."

In 29 separate paragraphs following are set out the rights of as many separate persons in and to certain definite subdivisions of land, for the greater portion of which it is alleged defendant wrongfully and illegally procured a patent from the United States to the plaintiff, defendant's grantor. These paragraphs allege the qualifications of such persons to acquire rights upon the public lands of the United States, and the rights claimed by each, whether as pre-emption, homestead or timber culture, and allege in each case that at the time of the settlement thereon by such settler the lands were "vacant unsurveyed public lands of the United States, not mineral nor swamp, nor selected as swamp, or overflowed land, nor otherwise reserved," and were settled upon with intent to acquire title thereto under the laws of the United States as a homestead, pre-emption or timber culture claim as alleged in each case, and that afterwards, in 1887, such lands were surveyed by the United States and thrown open for settlement in the United States land office at Lakeview, Oregon, on January 15, 1889, and were filed upon by such settlers on that and other days, and filing receipts issued therefor, and that such lands have been ever since and now are occupied by such settlers; the dates of settlement ranging from July, 1879, to November 12, 1889. Patent to the State from the United States for the lands acquired by the defendant from the State was issued October 6, 1903, and delivered to defendant, and it is alleged that this patent was fraudulently obtained by the defendant falsely and fraudulently representing to the Secretary of the Interior that the land described therein was swamp land and had been duly sold and reclaimed by its grantors, and after due proof of reclamation conveyed to it by the State, and that as such grantee it was entitled to have a patent issued from the United States to the State for the land. It is also alleged that the Governor, as

Land Commissioner, protested against the issuance of such patent, on the ground that the lands were not swamp and were fraudulently obtained, and that the several persons mentioned above as having settled on the lands under the pre-emption, homestead and timber culture laws of the United States were entitled to patents therefor from the United States and deeds from the State, and that the Governor refused to accept any patent for said lands to the State of Oregon, but that notwithstanding such protest and refusal a patent was issued to the State by the Secretary of the Interior "for the greater portion of said lands so settled on, or claimed, by the several persons above named, as pre-emptions, homesteads or timber culture claims, * * and other lands," and delivered to the defendant, who had it filed and recorded in the office of the County Clerk of Lake County, Oregon, on May 10, 1904; that since the delivery of such patent to it, defendant has begun certain ejectment actions, and a suit to quiet title to certain lands claimed to have been settled by the several parties mentioned as pre-emption, homestead or timber culture claimants, and threatens to, and will unless restrained, prosecute the actions and suit already begun, and will begin other like suits and actions against other settlers mentioned.to recover the lands settled upon and annul their rights to such lands:

"And because but few, if any, of said matters can be availed of as defenses at law, each and every of said persons will be much embarrassed and endangered in attempting to make any defense at law in any of said actions, and is entitled to have said several matters and things investigated and determined in a court of equity, where all said matters of defense can be fully considered and adjudged, and complete justice administered, and have said actions at law in the meantime enjoined and restrained."

A tender is made by plaintiff to pay any sum found due defendant for the purchase price of the lands patented by the plaintiff to defendant or its grantors, after deducting the profits received from the use and occupation of the lands, upon an accounting therefor and a surrender and cancellation of

said conveyances.    The amended complaint then closes with the following prayer:

"Wherefore, the plaintiff prays that said sales and conveyances of said lalnds, and said patent from the United States, may be declared unauthorized, illegal, fraudulent and void, and decreed to be given up and canceled; that each of said persons so settling upon and claiming a tract or parcel of said lands under the pre-emption, homestead or timber culture laws of the United States, and the laws of the State of Oregon in that behalf, as aforesaid, be declared and decreed entitled to retain possession of such tract or parcel, and to conveyance of the title thereof in fee simple as against every party to this suit; that it may be decreed that said patent from the United States to the State of Oregon of the 6th day of October, 1903, was never delivered to nor accepted by the State of Oregon, the plaintiff herein, and was inoperative to pass any title or interest in any of the lands therein described to said State of Oregon, the plaintiff herein, or to the Warner Valley Stock Company, the defendant herein; that the Warner Valley Stock Company, the defendant herein, its officers, agents and servants, be restrained by an order of this court from selling, conveying or incumbering any of the lands so settled upon and claimed by the several persons above named, under the pre-emption, homestead and timber culture laws of the United States and the laws of the State of Oregon in that behalf, and from prosecuting said actions or suits against said persons or any of them, and from interfering in any manner with the possession of said several tracts or parcels of lands, or any of them, pending this suit, or until the further order of this court; and that upon the final hearing said injunction be made perpetual, and that the plaintiff recover its costs and disbursements of this suit, and may have such other and further relief as to the court may seem meet and equitable."

A general demurrer to this amended complaint, for the reason that it did not state facts sufficient to constitute a cause of suit, was sustained by the lower court, and the case dismissed by a decree from which this appeal is taken.

AFFIRMED.

For appellant there was a brief with oral arguments by *Mr. Andrew Murray Crawford,* Attorney-General, *Mr. Edward Byers Watson* and *Mr. John Hicklin Hall.*

For respondent, there was a brief over the names of *Charles Amos Cogswell* and *Coovert & Stapleton,* with oral arguments by *Mr. Cogswell* and *Mr. Elmer E. Coovert.*

MR. JUSTICE HAILEY delivered the opinion of the court.

Plaintiff contends that there are four important questions arising upon the record to be determined upon this appeal: (1) The right of settlers upon swamp and overflowed lands before the issuance of patent therefor, under the acts of Congress and the statutes of the state. (2) The proper construction of the act of the state legislature of October 26, 1870, providing for "the selection and sale of the swamp and overflowed lands belonging to the State of Oregon," as authorizing the disposal of lands that were, on March 12, 1860, when the grant was made to Oregon, swamp and overflowed, but had prior to the passage of said act for their disposal become dry and fit for agricultural purposes from natural causes, and without capacity to receive any benefit from artificial reclamation. (3) The sufficiency of the applications to purchase of W. A. Owen and his associates, dated November 25, 1870, and of the amended application of R. F. and Martin McConnaughy of October 23, 1882, to withstand the operation of the act of October 18, 1878, in the way of forfeiture and repeal. (4) The sufficiency of the State's interest to enable it to maintain the suit. The case was ably and exhaustively argued at the hearing and is extensively treated in the briefs. We think, however, the question raised by the demurrer as to the interest of the State in the subject-matter of this suit is decisive of the case.

1. The question as to whether or not the lands involved are or were swamp lands is not before the court, as we view the complaint, hence the first three questions mentioned by the plaintiff are not to be considered, as they could arise only where the lands involved are swamp lands. The settlers upon the lands in controversy did not settle upon such lands as swamp or overflowed lands, but, as alleged in the complaint, at the date of settlement, "said lands were then and there

vacant unsurveyed public lands of the United States, not min-
eral nor swamp, nor selected as swamp or overflowed land,
nor otherwise reserved," and were settled upon "with intent
then and there to acquire title to the same under the provisions
of the homestead laws of the United States" in certain cases,
and in others under the pre-emption and timber culture laws
of the United States. In no place is it alleged that the lands
were state lands or swamp lands, or that the claimant settlers
held any right thereto under the state laws or under the swamp
land laws. On the contrary, it is alleged that when the lands
were surveyed by the United States in 1887, and afterwards,
on January 15, 1889, thrown open for settlement at the United
States land office at Lakeview, they were filed upon by the
claimant settlers as homestead, pre-emption and timber culture
claims, and all fees paid therefor required by the United States.
The settlers settled and filed upon these lands under the United
States laws, recognizing no right of the State therein, and
claiming that they never were swamp lands; hence it cannot
be claimed that such settlers ever acquired any rights therein
that would be affected by the state or national swamp land
laws. Before they could invoke rights under the state swamp
land laws, they would have to show that they had filed upon
swamp lands; but this is expressly denied by the allegation
that the lands were not "swamp lands or otherwise reserved."
We therefore fail to see wherein the rights of the settlers upon
swamp or overflowed lands before issuance of patent, or the
construction of the state swamp land act, or the sufficiency of
the applications of W. A. Owen and his associates and the
other parties mentioned, could affect the result in this case,
or should be further considered herein, so long as the lands
involved are not alleged to have been swamp or overflowed
lands.

2. The real purpose of this suit is to cancel a patent from
the United States to the State for certain lands patented to the
State as swamp and overflowed land, and to cancel certain
other patents from the State to the defendant and its grantors
(48th Or.—25)

for the same lands and prevent the defendant from asserting
its title derived from the United States through the State to
such land against certain settlers occupying portions of such
lands as claimants under the pre-emption, homestead and tim-
ber culture laws of the United States, and to protect such set-
tlers in their possession of such lands and confirm their rights
thereto as against the plaintiff and defendant. In other words,
the State, as plaintiff, is seeking to establish in the lands in
controversy certain rights claimed therein by certain settlers
as private individuals under the United States pre-emption,
homestead and timber culture laws, and not under the State,
in which lands the State has not now and never had any inter-
est, unless, as plaintiff contends, it has title thereto as being
a part of the permanent bed of a lake, which contention will
be considered hereafter in this opinion. Unless the plaintiff
has some interest in the land in controversy, it has no right to
maintain this suit: *State ex rel.* v. *Shively,* 10 Or. 267; *People*
v. *Stratton,* 25 Cal. 242; *United States* v. *Minor,* 114 U. S. 244
(5 Sup. Ct. 836, 29 L. Ed. 110) ; *United States* v. *San Jacinto*
*Tin Co.,* 125 U. S. 273 (8 Sup. Ct. 850, 31 L. Ed. 747) ; *Lynch*
v. *United States,* 13 Okl. 142 (73 Pac. 1095).

As stated by Mr. Justice LORD in *State ex rel.* v. *Shively,* 10
Or. 267, "it will hardly be asserted, if the subject-matter of the
allegation concerns the rights of private parties only and exclu-
sively, and the State has no direct interest in the prosecution
or result of the suit, that State interference in such controversies
ought not to be countenanced or tolerated, either directly or
upon the relation of private parties. When a remedy is provided,
either at law or in equity, complete and adequate, by which
matters in dispute between private parties may be adjusted and
settled, that remedy must be pursued by them. The state can-
not lend the power of its name, or invidiously assume and cham-
pion the cause of one private citizen against another, for the
purpose of settling rights or titles in controversy between them,
when each and all citizens are equally entitled to its protec-
tion." In that case the state, on the relation of certain parties

claiming to be the owners of the equitable title of a certain block of land in which the state had no interest, brought suit to have the defendant, Shively, who held the legal title to said land, declared a trustee thereof for the benefit of the relators, and have him transfer the legal title to them, and, in deciding it, it was held that "no right of the state is affected, either directly or indirectly, nor is any matter of public concern involved, by which, under particular circumstances, a right of action or suit exists in the state, or the state is authorized or induced to act as a party, or upon the relation of some private person for the enforcement or protection of such public interest. The matter, exhibited by the facts is wholly and entirely a controversy between private individuals, for which a complete and adequate remedy exists in equity, in a suit between them." This doctrine is also recognized in the other cases cited above. The question, then, in this case, is whether or not the complaint alleges any interest in the lands in controversy in the plaintiff, and the case is, so far as the effort to establish the rights of the claimant settlers to the land is concerned, entirely within the principle of the case of *State ex rel. v. Shively,* 10 Or. 267.

3. Plaintiff, however, contends that the case has a two-fold aspect, and, if the prayer to confirm the interests of the claimant settlers should be denied, the prayer for the cancellation of the patents from plaintiff to defendant and its grantors should be granted, and establish the title to the lands in controversy in the plaintiff under its right thereto as a part of the permanent bed of the lake; but this contention also depends upon the plaintiff having some interest in the lands in controversy, and is within the principle declared in the cases cited.

4. The lands in controversy in this suit, as shown by the complaint and the statements of the plaintiff's counsel in their brief, are the lands settled upon by the various claimant settlers under the pre-emption, homestead and timber culture laws of the United States, and it is only these lands, if any, that are referred to as having been embraced in the permanent bed of Lake Warner, and hence by reason thereof belonged to the state,

and it is these lands only that are sought to be affected by any decree to be entered herein. It is alleged, however, that these lands at the time of the settlement thereon by the various settlers were "vacant unsurveyed public lands of the United States, not mineral nor swamp, nor selected as swamp or over-flowed land, nor otherwise reserved." The claimants must, therefore, have acquired their settlement rights thereto as such vacant lands, and afterwards filed thereon under the United States laws, when the lands had been surveyed and thrown open for settlement by the United States. Conceding, but not deciding, that Lake Warner, by reason of the meander thereof, as claimed by plaintiff, is presumed to have been a navigable lake when the lands in controversy formed a part of its perma-nent bed, and that title to such lands vested in the state, there is no allegation that any other lands included in the patents sought to be canceled were embraced in the bed of such lake, and consequently such other lands are not involved herein, and the title thereto did not belong to the state, for they were not a part of the bed of the lake, and no benefit could come to the plaintiff from having the patents canceled for such other lands. Neither could any benefit accrue to the plaintiff from cancellation of the United States patent and its own patents to the defendant and its grantors, and decreeing a conveyance from it and defendant to the claimant settlers of the lands in controversy. The only benefit it could derive from this suit, if any, would be the cancellation of its patents to the defendant and its grantors, and decreeing the title to the lands in controversy to be in the plaintiff as a part of the permanent bed of Lake Warner.

5. The presumption invoked by the plaintiff that Lake War-ner was a navigable lake, and therefore title to the lands in controversy embraced in its bed vested in the plaintiff, is based entirely upon the allegations of the plaintiff regarding the char-acter of the lands in controversy at the time W. A. Owen and his associates and the McConnaughys made applications to pur-chase such lands under the swamp land act and prior thereto.

These allegations are that the applicants, at the time they made their applications, did so,

"having full notice, and well knowing and believing, that none of the lands thereafter settled upon or claimed under the pre-emption, homestead or timber culture laws of the United States, hereinafter described, by the persons hereinafter named, was then, or on the 12th day of March, 1860, swamp or overflowed land, but was then, and on said 12th day of March, 1860, embraced within and part of the permanent bed of Lake Warner and covered by the waters thereof."

These allegations only go to the fact of the notice, knowledge and belief of the applicants as to the character of the lands and not to the fact of the character of the lands at that time. They do not charge the fact that such lands were then a part of the bed of the lake, but only that these applicants made their applications having full notice, and well knowing and believing, that they were a part of the bed of the lake. Denial of such notice, knowledge or belief on the part of the applicants would be a denial of the allegations contained in this complaint, but not a denial of the condition of the lands at that time. But, giving to these allegations all that is contended for them by the plaintiff, they are clearly negatived by the further, later and repeated allegations that at the time of the settlement upon the lands in controversy, they were vacant unsurveyed public lands, and not swamp lands, nor otherwise reserved, and were thereafter surveyed and filed upon as public lands of the United States, clearly showing that the plaintiff has no interest therein.

Construing the complaint in its entirety, we think it fails to allege any interest in the plaintiff in the lands in contro-versy. The plaintiff, therefore, having no interest in the lands in controversy, it could not, either upon the relation of the Attorney-General or otherwise, lend the power of its name to adjust a controversy between private parties, and this is clearly the object of this suit, as is shown by the latter part of para-graph 47 of the complaint, wherein it is alleged:

"And because but few, if any, of said matters can be availed of as defenses at law, each and every of said persons will be

much embarrassed and endangered in attempting to make any defense at law in any of said actions, and is entitled to have said several matters and things investigated and determined in a court of equity, where all said matters of defence can be fully considered and adjudged, and complete justice administered, and have said actions at law in the meantime enjoined and restrained."

This allegation on the part of plaintiff expressly recognizes the right of the settlers to have their matters adjusted in a court of equity, and such being the case, as is clearly shown by the authorities heretofore cited, and the state having no interest in the lands in controversy, the decree of the lower court should be affirmed; and it is so ordered.        AFFIRMED.

Decided 21 November, 1906.

ON MOTION TO REMAND.

MR. JUSTICE HAILEY delivered the opinion of the court.

6. The demurrer to the amended complaint having been sustained on appeal, and the decree of the lower court dismissing this case affirmed, plaintiff filed a motion to have the case remanded, with leave to apply to the court below to amend its complaint, so as to show its interest in certain of the lands mentioned therein and its right to equitable relief in the cancellation of deeds therefor to the defendant. In support of this motion plaintiff cites *Powell* v. *Dayton, S. & G. R. R. Co.,* 14 Or. 22 (12 Pac. 83), in which the overruling of a demurrer to a complaint was sustained, and this court refused to grant leave to answer over, but remanded the cause for further proceedings, and announced as a rule of practice in such cases "that when this court does not make a final disposition of a cause, but remands the same to the court below, it will be open for that court to determine in the first instance whether the defendant shall be permitted to answer or not." This rule, however, is not applicable to the case at bar where the appellant seeks to have the cause remanded, with leave to apply to amend, and by so doing substitute a cause of suit in its own favor only for the original cause of suit, which was for the benefit of others not connected with plaintiff's interest. *Fowle* v. *House,*

30 Or. 305 (47 Pac. 787), is also cited, in which a decree sustaining a demurrer to a complaint was affirmed, and the cause remanded "for such further proceedings as may be deemed proper, not inconsistent with the opinion herein," and a motion was denied to recall the mandate and amend the decree, so as to allow the plaintiff to amend his complaint. The court in that case held that it is for the lower court to determine in the first instance whether a plaintiff shall be allowed to amend his complaint, and that this court should not interfere with the exercise of its discretion by directing what course it should pursue in the matter. It is suggested in the motion that every objection to the sufficiency of the complaint can be obviated by the amendment, and the delay and expense of bringing a new suit thereby avoided. This, however, is not a matter which this court can consider, and should have been acted on by the plaintiff in the lower court, as the interest of the plaintiff in the lands in controversy was one of the questions raised by the demurrer. Plaintiff, however, refused to plead further, and stood upon its amended complaint, and it is now too late to complain of its own action in that respect.

The motion to remand, with leave to apply to amend, will therefore be denied. Affirmed: Motion Denied.

---

Decided 21 August, 1906.