[No. 13705.   In Bank. — April 4, 1891.]

## A. N. BUCHANAN, RESPONDENT, *v.* GEORGE D. NAGLE, APPELLANT.

SWAMP AND OVERFLOWED LANDS — APPLICATION TO PURCHASE — SEGREGATION.— Swamp and overflowed lands granted to the state by the United States are not subject to application for purchase before segregation, and no rights attach by reason of an application filed prior to the segregation, nor by reason of the subsequent approval of the application and the issuance of a certificate of purchase based thereon after the segregation.

ID. — CONSTRUCTION OF CODE— SURVEY —DESCRIPTION OF LAND. —The Political Code contemplates that no steps shall be taken towards a purchase of swamp and overflowed lands, or to obtain a preference by an application therefor, before the segregation of the lands to the state by

the approval of the United States survey, which can alone enable the applicant to describe the exterior boundaries of the land as required by the code.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Garber, Boalt & Bishop,* for Appellant.

*Freeman & Bates,* for Respondent.

McFARLAND, J. — This is an action to determine a contest arising in the state land-office as to the right to purchase from the state a certain section of swamp and overflowed land in Tulare County. Judgment went for plaintiff, and defendant appeals from the judgment, and from an order denying a new trial.

The court below found, among other things, that the land in controversy was not segregated by the United States to the state until October 14, 1884; that defendant Nagle's application was made on December 14, 1883, and filed in the state land-office on April 1, 1884,— all before the segregation; and that as the land was not subject to application before segregation, no rights attached by reason of the application, nor by reason of the subsequent approval and certificate of purchase made after the segregation, but based on said application.

Counsel for appellant argue very fully and ably that there is nothing to prevent the filing of an application to purchase swamp land before segregation; but the contrary was held in *Garfield* v. *Wilson,* 74 Cal. 175, and in the recent case of *Wren* v. *Mangan, ante,* p. 274, decided since the present case was submitted. Counsel attack the correctness of the conclusion stated in *Garfield* v. *Wilson;* but we are satisfied with that conclusion, and with its approval in *Wren* v. *Mangan.* We do not see

that the question involved is at all changed by the
adoption of the theory that the act of September 28,
1850, was a grant *in præsenti* to the state of the swamp
lands within her territory; for that being so, the state
has still the power to provide how they may pass into
private ownership. And she has made no provision
for an application to purchase before segregation. In-
deed, the provisions of the code on the subject clearly
contemplate that no steps towards a purchase are to be
taken, and no advantage or preference to be gained by
an application prior to such segregation. It is difficult
to see how the requirements of the code with respect to
applications to purchase could ordinarily be complied
with at all before the approval of the United States sur-
vey, which constitutes the segregation. For instance,
section 3443 of the Political Code, which establishes
the method of making an application to purchase swamp
land, provides for an affidavit of the applicant, in which,
among other things, he must *describe the land* which he
desires to purchase, and must swear that " he knows the
land applied for, and the exterior boundaries thereof."
But can an applicant swear to such knowledge, or have
it, prior to the survey and segregation by the United
States?

In the case at bar, the applicant undertook to make
application for land described as a certain section 9;
but how could he have known where section 9 was, or
" the exterior boundaries thereof," before there had been
an approved survey of even the township in which said
section was supposed to lie? The lines of townships are
" created " by the United States survey, and have no ex-
istence before it. (*Robinson* v. *Forrest*, 29 Cal. 318; *Mid-
dleton* v. *Low*, 30 Cal. 596.) Section 3445 of the Political
Code is in accord with the doctrine heretofore declared
by this court. It refers to the application described in
section 3443, and evidently assumes that it applies only to
segregated land, and provides that where lands have been

segregated by the authority of the United States, but "have not been sectionized by the same authority," an applicant to purchase said lands may have them sectionized by the county surveyor. But there is nowhere any provision for an application before segregation; and such an application is out of harmony with the clear intent of the legislature. And we are satisfied with the former decisions that the approval of the United States survey constitutes the segregation. We are also satisfied that in this case there was no such segregation of the land in contest until October 14, 1884.

It is also urged, strenuously, by counsel for respondent that appellant's application was void because it appears, and is found by the court, that appellant had never been upon and had never seen the land applied for; that therefore his statement in his affidavit that he "knows *of his own knowledge* that there are no settlers thereon" is necessarily untrue; and that the things required by section 3443 must not only be in the affidavit, but must *be true.* But it is not necessary here to determine this somewhat important question, because, for the reasons above given, the judgment must be affirmed.

The judgment and order appealed from are affirmed.

DE HAVEN, J., PATERSON, J., HARRISON, J., and GAROUTTE, J., concurred.