Argued Dec. 10, 1909, decided Feb. 1, 1910; rehearing denied May 17, 1910.

## STATE OF OREGON v. WARNER VALLEY STOCK COMPANY*

[106 Pac. 780; 108 Pac. 861.]

PUBLIC LANDS — SWAMP LANDS — SALE BY STATE — SUFFICIENCY OF APPLICATION.

1. Act Oct. 26, 1870 (Laws 1870, p. 54), provides for the selection, description, and sale of swamp lands by the commissioner of lands, and requires applicants for purchase within 90 days after public notice to pay to the commissioner 20 per cent of the purchase price. Act Oct. 18, 1878 (Laws 1878, p. 41), repealed the former act, and required the commissioner of school lands to sell swamp lands theretofore or thereafter selected as soon as such selections are segregated and approved as required by act of congress and provides that applications to purchase made prior to the act, which have not been regularly made, or those which, though regularly made, the applicants have not fully complied with the law, including the 20 per centum payment, shall be void, and confirming the title of applicants where the terms of the act of 1870 have been fully complied with, including the per centum payment. Laws 1887, p. 9, makes void certificates issued for swamp land on which the per centum payment had not been paid prior to January 17, 1879, and authorized deeds to legal applicants who have complied with the act of 1870, including the per centum payment. An application was filed November 28, 1870, to purchase swamp lands described by reference to natural objects, but not indicating the amount of land. The lands covered by the application were not surveyed until 1875, when township lines and a part of the section lines were established, and the survey was completed in August, 1879. On September 7, 1881, and November 5, 1883, O. filed applications and tendered the per centum of the price, each of which were refused because the board had not adjudged him entitled to purchase, and on March 13, 1884, O., as agent for the applicants of 1870, filed an application, stated to be supplemental to the original application, describing by legal subdivisions the lands claimed to be covered by the original application, and such applicants thereupon assigned their interest to O., who on March 14th filed another application for the same and other lands, and tendered the per

*This case has been appealed and is now pending in the United States Supreme Court.                                                              REPORTER.

centum of the price, and on April 3, 1884, the state land department issued to him (the applicant) a certificate. *Held,* that the act of 1870 did not contemplate a sale of land not segregated and identified, and hence the application of November 28, 1870, was ineffectual, and the act of 1878 did not validate the application, the per centum not having been paid before the repeal of the former act, and the application being unenforceable for want of mutuality, and therefore the certificate of sale was void, the only application not refused, upon which it could be based being made prior to the act of 1878.

PUBLIC LANDS—SWAMP LANDS—SELECTION BY STATE—NECESSITY OF SURVEY.

2. Swamp lands could not be selected by the State and approved by the Secretary of the Interior under act congress March 12, 1860, c. 5, 12 Stat. 3, extending to Oregon the act granting to other states swamp lands within their limits until a survey thereof was made.

PUBLIC LANDS—SWAMP LANDS—CONSIDERATION—PRICE—NECESSITY OF FIXING BY CONTRACT.

3. Under the act of 1870 (Laws 1870, p. 54), the contract with the commissioner must fix a price; the provision in the act for a minimum price of $1 per acre not obviating the necessity of fixing a price in the contract.

PUBLIC LANDS—PATENTS—PRESUMPTION OF VALIDITY.

4. No presumption in favor of validity attaches to a deed issued by the state land board without authority, when the want of authority is shown in a direct attack by the State.

PUBLIC LANDS—SWAMP LANDS—AUTHORITY OF STATE BOARD.

5. The state land board has no authority in the sale of swamp lands other than that conferred by statute.

PUBLIC LANDS—SWAMP LANDS—SALE BY STATE—ACTIONS FOR ANNULMENT—SUFFICIENCY OF EVIDENCE.

6. In an action by the State to cancel deeds to swamp land claimed to have been issued without authority of law, evidence *held* not to show an application to purchase by one through whom defendants claimed earlier than May 5; 1880, and therefore after the repeal of the law on which the applications were based.

PUBLIC LANDS—CANCELLATION OF DEED TO STATE LANDS—ACTIONS BY STATE—LIMITATIONS.

7. Civ. Code, § 378 (Section 392, B. & C. Comp.), as amended by Laws 1878, p. 25, § 1, prohibiting any suit to cancel a patent to lands issued by the State unless commenced within 10 years from the date of the patent, only applies to controversies arising under Section 517 (Civ. Code, § 501), in case of conflicting claims to a grant from the State and not to a suit by the State to cancel deeds to swamp lands issued by the State, claimed to be invalid for noncompliance with statutory requirements.

EQUITY—APPLICATION OF STATUTE OF LIMITATIONS.

8. A suit by the State to cancel deeds to swamp land valid on their face, but issued without authority of law, being an action of which equity has exclusive jurisdiction, the statutes of limitation do not apply as in legal actions, since equity will be governed by the circumstances of each case in determining whether the suit is barred.

Equity—Application of Statute of Limitations.

9. Section 516, B. & C. Comp., permitting one claiming an interest in land not in the actual possession of another to maintain a suit in equity against one who claims an adverse interest therein to determine such claim, is not a limitation upon the exclusive jurisdiction of equity to cancel deeds, but merely enlarges its jurisdiction to include suits it could not entertain unless plaintiff's title was attacked, in an action under which plaintiff must be in possession with the legal title and against which limitations will not run while the adverse interest exists, so that the limitations applicable thereto would not apply to a purely equitable action for cancellation.

Cancellation of Instruments—Deeds—Limitations—Deeds Executed Without Authority.

10. Where a deed is executed in the owner's name without authority, lapse of time without ratification or any other circumstances will not bar a suit in equity to cancel the deed.

Public Lands—Swamp Lands—Validity of Conveyance.

11. The state land board being a co-ordinate department of the state government, and having power to dispose of swamp land and to determine an applicant's claim thereto, its deed to such land conveys title whether the decision of the board that the land has been successfully cultivated for the statutory period is correct or not, and such deed is not subject to collateral attack, but may be attacked directly in equity.

Public Lands — Swamp Lands — Sale by State — Annulment — Laches.

12. Such deed being regular on its face, a suit by the State to cancel the deed on the ground of the insufficiency and falseness of the affidavits as to the extent of cultivation, may be barred by equitable limitations, and plaintiff is *prima facie* guilty of laches where more than the statutory period has elapsed since the execution of the deed, and the facts presented do not excuse the delay.

Public Lands—Cancellation of Deed to State Lands—Laches—Burden of Proof.

13. Where such suit was brought more than 10 years after issuance of tne deed, the burden was on the State to show facts excusing the delay.

Public Lands—Cancellation of Deed to State Lands—Laches—Excusing by Pleading.

14. Allegations in such suit that defendant's fraudulent acts were unknown to plaintiff until a certain date, were insufficient as not specifically alleging impediments to a bringing of the suit within the 10 years.

Estoppel—Swamp Lands—Grant to State—Land Claimed Under Homestead and Pre-Emption Laws—Estoppel to ᴅeny Title.

15. Laws 1889, p. 100, §1, confirms the title of swamp and. overflowed lands in claimants who have completed settlement thereon or who may thereafter complete settlement under the homestead or pre-emption laws of the United States, and shall have obtained a patent or certificate of final proof. Laws 1899, p. 162, § 20, enacted during the contest in the United States land office of pre-emption and homestead claims in swamp land located in Oregon, which contest resulted in the cancellation of such claims and the patenting of such lands to the State, prohibits the state land board from questioning the title of any person to swamp

lands acquired by compliance with the pre-emption or homestead laws of the United States. *Held,* that no state ·officer could contest a settler's claim on account of the State's interest in the land as swamp land, and that the Governor requested one who had no valid title to swamp land, title to which was in the State, to participate in and pay the costs of the contest of the pre-emption and homestead claims, would not estop the State from denying such person's title to swamp lands.

APPEAL AND ERROR—AFFIRMANCE—REMAND—FINAL JUDGMENT.

16. Where a decree sustaining a demurrer to the complaint for not stating a cause of action is affirmed on appeal, final judgment will not be entered, but the case will be remanded for such further proceedings as are deemed proper.

LIMITATION OF ACTIONS—LIMITATION AS AGAINST STATE.

17. The statute of limitations (Sections 3-26, B. & C. Comp.), cannot apply to the State except by virtue of Section 13, which provided that the limitations prescribed in such title shall so apply, and which has been repealed by the amendment of 1903 (Laws 1903, p. 18).

LIMITATION OF ACTIONS—LIMITATION AS AGAINST STATE.

18. The statute of limitations (Sections 3-26, B. & C. Comp.), applies only to actions, and Section 392, providing as to suits in equity that they shall only be commenced within the time limited to commence actions, does not make the statute apply to suits by the State, and neither does Section 13 apply to suits, and hence the State is not barred by limitation as to a suit in equity.

LIMITATION OF ACTIONS—CANCELLATION OF PATENTS—ACTION BY STATE.

19. The clause of Section 392, B. & C. Comp., providing no suit shall be maintained to set aside, cancel, or annul a patent to land issued by the United States or the State, unless commenced within 10 years, refers to persons claiming land wrongfully patented to another by the United States or the State; and, to make it apply to the State, the statute must expressly so provide.

QUIETING TITLE—RIGHT TO SUE—POSSESSION AS CONDITION PRECEDENT.

20. Plaintiff need not be in possession to maintain suit to cancel deeds, as the relief sought is the subject of the court's general equity powers, which existed prior to and independent of Section 516, B. & C. Comp., permitting one claiming an interest in land not in the actual possession of another, o sue it equity one claiming an adverse interest therein.

QUIETING TITLE—EQUITY JURISDICTION—ADEQUATE REMEDY AT LAW—POSSESSION OF PLAINTIFF—EFFECT.

21. If plaintiff is out of possession, and his remedy by ejectment is adequate, equity will not entertain jurisdiction to remove a cloud.

EQUITY—GROUNDS OF JURISDICTION—INADEQUATE REMEDY AT LAW.

22. If the relief is such that equity alone can grant it, and the remedy at law is inadequate, that is sufficient to give jurisdiction.

CANCELLATION OF INSTRUMENTS — SUIT THEREFOR — JURISDICTION OF EQUITY.

23. That a deed, valid on its face, is void does not take a suit to cancel it out of the jurisdiction of equity; but, as the invalidity can only be made apparent by extrinsic evidence, it is the duty of equity to sweep it away, and equity jurisdiction will be exercised to cancel a void deed, except where its invalidity is apparent on its face.

From Lake: HENRY L. BENSON, Judge.

This is a suit by the State of Oregon against the Warner Valley Stock Company, a corporation, and others, for the purpose of canceling certain deeds issued by the State Land Board to R. F. McConnaughy, one of the defendants herein, and the Warner Valley Stock Company, conveying to them large bodies of swamp land. From a decree in favor of the defendants, plaintiff appeals.      AFFIRMED IN PART: REVERSED IN PART.

For appellant there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney General, *Mr. Isaac H. Van Winkle,* Assistant Attorney General, *Mr. William P. Lord,* and *Mr. William J. Moore* with an oral argument by *Mr. Crawford.*

For respondent, the Warner Valley Stock Company, and for all other defendants, excepting R. F. McConnaughy, there was a brief over the names of *Messrs. Coovert & Stapleton* and *Mr. Edward B. Watson* with oral arguments by *Mr. Elmer E. Coovert* and *Mr. James B. Kerr,* and *Mr. William D. Fenton, amicus curiae.*

MR. JUSTICE EAKIN delivered the opinion of the court.

This is a suit commenced by the State against the Warner Valley Stock Company, R. F. McConnaughy, its predecessor in interest, and 28 other persons, who are homestead or pre-emption settlers on portions of the land involved, for the purpose of canceling seven certain deeds issued by the State Land Board to said McConnaughy and the Warner Valley Stock Company, conveying to them large bodies of swamp land now claimed by the latter. The complaint is very lengthy, consisting of 83 pages of printed matter, and we can only refer briefly to the matters affecting the validity of the deeds. Although the complaint does not state separately the facts concerning each deed sought to be canceled, counsel for each party and also the trial court have treated

it as containing a several cause of suit as to each of the deeds, and we will consider it as containing at least three causes of suit for the purpose of this opinion. The four deeds, of date August 21, 1891, and the one dated March 23, 1893, all to McConnaughy we will treat as one cause of suit, the one dated January 18, 1883, to McConnaughy, as one cause, and the deed to the Warner Valley Stock Company, of date June 23, 1899, as another; this classification being suggested by the points considered. A demurrer to the complaint was filed by the Warner Valley Stock Company and was sustained by the court as to each of the deeds except the one dated June 23, 1899, conveying 5,228.11 acres, on the ground that the suit is barred by the statute of limitations. The defendant homestead and pre-emption settlers filed an answer, but, upon motion of the Warner Valley Stock Company, it was stricken out and no further proceeding was had in relation to them. Issue was tendered by the Warner Valley Stock Company to the last cause of suit, which was tried upon the evidence, and findings and decree rendered against the plaintiff. The plaintiff appeals.

1. The Warner Valley Stock Company claims to have acquired title to the land, both in its own right and through its predecessors in interest, from the State as swamp land, granted to the State by the act of Congress on March 12, 1860 (Act March 12, 1860, c. 5, 12 Stat. 3), extending to Oregon the act granting to Arkansas and other states, swamp lands within their limits of date September 28, 1850 (Act September 28, 1850, c. 84, 9 Stat. 519). The legislative assembly of Oregon by an act of date October 26, 1870 (Laws 1870, p. 54), seeking to avail itself of the grant above referred to, made provision for the selection, description, and sale of the swamp lands within the State by the commissioner of lands, viz., the Governor. None of the lands involved in this suit were surveyed until June, 1875, when some township lines and

a portion of the section lines were established and the survey completed in August, 1879. Pursuant to this act, C. C. Beekman and four others on November 28, 1870, filed with the said commissioner an application to purchase certain swamp lands described by a general reference to natural objects. The amount of land included is not stated in the application, nor can it be computed therefrom, but consisted of a large body of land, probably more than 150 square miles. These applicants made no other effort to comply with the act of 1870 prior to March 13, 1884. On May 5, 1880, H. C. Owen made application to purchase under said act certain lands which evidently included the lands applied for by C. C. Beekman and others. On September 7, 1881, he filed a similar application for the same and additional lands, and again, on March 6, 1883, he filed another. On March 13, 1884, the said C. C. Beekman and others, by their agent, H. C. Owen, filed an application, alleged therein to be supplemental to their original application, describing by legal subdivisions the land said to be covered by their first application and as a renewal of it, and on March 14, 1884, duly assigned to H. C. Owen all their right, title, and interest under said application and supplemental application, and on the same day H. C. Owen filed another application to purchase the same and other lands, and tendered to the State Land Board $15,780.32, being 20 per centum of the purchase price of the amount of land then available under his said application. Thereafter, on April 3, 1884, the State Land Board, acting upon said application, received said payment and issued to H. C. Owen certificate of sale No. 144, consisting of 78,901.61 acres, described by legal subdivisions. Upon this certificate of sale No. 144 depends the validity of six of the deeds in question, as it is the only authority for their issuance. Afterwards the State Land Board issued to McConnaughy, as successor in interest to said H. C. Owen,

Sig. 10

four deeds of date August 21, 1891, conveying to him certain lands aggregating 14,984.20 acres, and on March 23, 1893, issued to him another deed conveying 1,356.70 acres, all based upon said certificate of sale No. 144, and cancellation of which is asked in this suit.

The application of C. C. Beekman and others, filed November 28, 1870, is in the following language:

"We, the undersigned citizens of the United States, and each over the age of twenty-one years, do hereby apply to purchase the following described unsurveyed swamp and overflowed lands situated, lying and being in Grant County, commencing at 'Stone Bridge,' thence west to the road called 'Lower Bidwell Road,' near foothills; thence in a northeasterly direction to a point of willows on Heney Creek and near the sink of said creek; thence north twenty miles, or along foothills on west side of marsh; thence east five miles to or near the east foothills; thence in a southerly direction along east side of marsh and near the foothills to the C. F. Smith military road, east of Stone Bridge; thence west to the place of beginning. Also commencing at the 'Stone Bridge' south to point of hill, thence west to spring near road; thence south along foothills to springs called 'Warner Springs'; thence south along foothills to a large stone, the lower Bidwell Road passing on each side of stone; thence along the road, called lower Bidwell Road, to and including a lake called 'Little Warner' at foot of mountain, still continuing along said road passing old mail station, known as Soldier Camp; still following said road, passing a small alkali lake; still south along said road to a point on Deep Creek called 'Halfway House'; still southward along said south road to a creek with willowy growth on banks; thence eastwardly along line of said marsh, near foothills surrounding same; thence northerly along the line of said marsh to the camp of C. F. Smith, military road; thence westerly to the place of beginning; the same intended to include both Lake Warner and Little Warner, Deep Creek, and all marsh lands surrounding the same. This application is made under the provisions of an act of the legislative assembly of the State of Oregon, entitled an act for the selection and sale of swamp

and overflowed lands belonging to the State of Oregon, approved October 26, 1870.

Witness our hands this 25th day of November, 1870, at Jacksonville, Oregon.

> W. A. OWEN;
> A. P. OWEN,
> T. G. REAMES,
> C. C. BEEKMAN,
> B. P. SMITH."

This application was numbered "30," and will be hereafter referred to by number. The last application of H. C. Owen, upon which certificate of sale No. 144 was issued, includes much of the land mentioned in application No. 30, and the certificate makes particular reference to the fact that it is issued to H. C. Owen as successor to C. C. Beekman and others, evidently referring to application No. 30. The first tender of the 20 per centum of the purchase price of the lands claimed under application No. 30 by any one authorized to make such tender, was made on March 14, 1884, by H. C. Owen, in connection with his application to purchase of that date, and was accepted by the board.

Section 1 of the act of 1870 provides that the commissioner by deputies shall proceed as soon as practicable to select in the field all the lands rendered unfit for cultivation by inundation or overflow, and "it shall be the duty of such deputies to describe each tract of swamp or overflowed land they may select, in a clear and distinct manner, either by legal subdivisions or by actual survey." Section 2 provides that, after such selections are made, "it shall be the duty of said commissioner to make out maps and descriptions thereof in duplicate, one copy to be kept in suitable books in his office, and the other to be filed in the office of the county clerk of the county in which such swamp lands may be located. * * Upon the receipt of such certificate (from the county clerk) it shall be the duty of the said commissioner to

give public notice of said completion, approval and filing, for four weeks successively." Section 3 provides that the swamp land of this State shall be sold by said commissioner at a price not less than $1.00 per acre, and any person over the age of 21 years and a citizen of the United States "may became an applicant for the purchase of * * said swamp and overflowed lands upon filing his application therefor (describing the tract or tracts he desires to purchase) by the actual survey; or if no survey has been made, then by fences, ditches, monuments or other artificial or natural landmarks, with said commissioner, whose duty it shall be to indorse thereon the actual date of such filing. * * Within 90 days after the date of public notice provided in section two of this act, twenty per centum of the purchase money shall be paid by the applicant to the commissioner." Nothing was done by the commissioner in selecting, describing, or mapping swamp land under this act. The purpose of the provisions of section 2, as to filing the maps and descriptions in the county in which the lands lie, and giving "public notice" thereof, was to give all an equal opportunity to purchase; and the provision of section 3, that the applicant to purchase "any tract or tracts of said swamp" land, refers to the tracts of swamp land selected, marked, and described, as provided in section 1, and the provision of section 3, that if not surveyed the applicant may describe the land applied for by natural or artificial landmarks, cannot be construed to mean or include swamp land not yet segregated or in some manner identified as such, either by the United States or by the State. This would have been wholly impracticable. There was no action by either the commissioner or the board, and could have been none on such a description. The use of natural monuments, in connection with the survey in the description of the land, might be sufficient to identify a part of a tract meandered by the United States survey or by the

State as swamp lands, but to describe a tract of land not yet reached by either the public or the State survey in such manner is not practicable, and was not contemplated by the ·act of 1870. Especially. is this true of application No. 30, which contains no definite description.

2. Neither could the lands be selected by the State and approved by the Secretary of the Interior under the act of Congress of 1860, until a survey was made: *Buchanan* v. *Nagle,* .88 Cal. 592, (26 Pac. 512). The opinion of Judge Deady in *McConnaughy* v. *Pennoyer* (C. C.) 43 Fed. 198, can hardly be considered authority on this question. It proceeds upon the statement in the petition that H. C. Owen had regularly applied in pursuance of the act of 1870 to purchase certain swamp lands "theretofore certified to the State by the Secretary of the Interior as swamp and overflowed under said act of 1860," which was not true of any land included in certificate of sale No. 144, and therefore can have no bearing upon the facts in this case. Filing the application could not alone constitute a contract with the commissioner. The land was not offered for sale by the act of 1870, as stated in that opinion, but provision was made that the commissioner might sell the same on certain conditions and under certain circumstances.

3. Furthermore, there could be no contract with the commissioner without an agreement as to the price. The act of 1870 does not fix a price at which the land shall be sold. That is left to the commissioner, but it shall not be less than $1.00 per acre: *McRae* v. *Shaffer,* 89 Mich. 463 (50 N. W. 1091). The application makes no reference to the price of the land. It may have been made upon the assumption that the price would be the minimum named in the act, but there is no ground for such assumption. The legislative act of October 26, 1870, was expressly repealed by the act of date October 18, 1878

(Acts 1878, p. 41), and in lieu thereof it was provided that the board of commissioners for the sale of school lands, namely, the Governor, the Secretary of State, and the State Treasurer, are required to sell swamp lands, which may have been or may hereafter be selected, as fast as such selections are segregated and approved, as required by the laws of the United States, granting such lands to this State, not exceeding 320 acres to any one person and at a price not less than $1.00 per acre. Section 9 of the act provides as follows:

"All applications for the purchase of swamp and overflowed lands or tide lands made previous to the passage of this act, which have not been regularly made in accordance with law, or which were regularly made, and the applicants have not fully complied with all the terms and requirements of the law under which they were made, including the payment of the twenty per centum of the purchase price, are hereby declared void and of no force or effect whatever."

The question arises: Does the act of 1878 except from its operation or give validity to application No. 30 above set out? This becomes important, as it is the basis upon which certificate of sale No. 144 was issued. The commissioner was authorized by the act of 1870 to sell at a price to be agreed upon, but there was no offer by the State nor acceptance of any application that could constitute a contract with the State. It is not necessary to decide whether a tender of the 20 per centum of the purchase price upon a sufficient application on the basis of one dollar per acre and an acceptance thereof by the commissioner would have bound the State under the act of 1870 as a contract, even though there had been no compliance by the commissioner as to selection and notice. As to application No. 30, aside from the filing, he did nothing in relation to the land or its sale. In *McConnaughy* v. *Pennoyer* (C. C.) 43 Fed. 198, Judge Deady held that the filing of the application constituted an

acceptance of the offer contained in the act of October 26, 1870, and therefore constituted a contract between the applicant and the State. But such a conclusion is not justified by the facts alleged in this case, and Justice LAMAR, in *Pennoyer* v. *McConnaughy*, 140 U. S. 19 (11 Sup. Ct. 699: 35 L. Ed. 363), [same case upon appeal], does no concur in this construction by Judge DEADY, but holds in effect that, although there was no contract, the application was valid under the act of October 26, 1870, and would become a contract when 20 per centum of the purchase price should be paid, and for which the applicant was not in default on January 17, 1879, when the act of 1878 took effect; that by the act of 1878 the legislature had no intention of avoiding applications made under the act 1870 except where an applicant had failed to comply with the provisions thereof. The effect of the language of section 9 of the act of 1878 is that previous applications to purchase swamp land which had not been regularly made or on which the 20 per centum of the price had not been paid, are declared void, without reference to whether the public notice provided for in section 2 of the act of 1870 had been given. Section 10 of the act indicates this to be its meaning when it confirms the title to all applicants where the terms of the act of 1870 "have been fully complied with, including the payment of the twenty per centum of the purchase price," thus only confirming applications upon which the 20 per centum had been paid. This is further evidenced by the language of the act of 1887 (Laws 1887, p. 9) to the effect that certificates issued for swamp land on which the 20 per centum had not been paid prior to January 17, 1879, were declared void. And again by section 5, which provides:

"Any legal applicant to purchase swamp or overflowed land who had complied with the provisions of an act approved October 26, 1870, * * including the payment

of the 20 per cent of the purchase price, prior to January 17, 1879, shall * * receive a deed for the land."

Thus the legislature interprets Section 9 of the act of 1878 to the effect that it avoided all applications upon which the 20 per centum had not been paid. Justice LAMAR in the case of *Pennoyer* v. *McConnaughy*, 140 U. S. 19 (11 Sup. Ct. 699: 35 L. Ed. 363), adopts the opinion of the State land board to the effect that by the act of 1870 the applicant was not in default in the payment of the 20 per centum until 90 days after the notice provided for in Section 2, and therefore, as no notice had been given, that application was expressly excepted. It is quite evident that the conclusion of Justice LAMAR is based upon the statement in the petition above referred to, to the effect that the application was sufficient in form and was for lands selected and certified by the Secretary of the Interior, and therefore regularly made in accordance with law, viz., made after such selection and notice, and thus having no resemblance to the facts in this case.

Application No. 30 was also avoided by Section 9, in that it had "not been regularly made in accordance with law," as shown above, and neither the board nor the legislature were under obligations to recognize it, and it did not have effect to remove the land from the power of legislative disposition. Counsel for defendant contends that the State could have enforced application No. 30 as a purchase, but this cannot be so, as it is void for want of mutuality and also for want of identity of the land, its quantity and price. Without regard to the exception of contracts from the effect of the act of 1878 upon which the applicant was not in default for non-payment of the 20 per centum of the purchase price at the time of the repeal of the act of 1870, this application was void, and the exception could not give it life, and it fell with the repeal, independent of the act of 1878.

4. The presumption invoked by the defendant in favor of the validity of a patent or State deed only relates to one issued in a case in which the board had jurisdiction of the subject-matter, and, if issued improperly, it is only voidable, but conveys the title, and cannot be attacked collaterally.   But that presumption can have no application to a deed issued without authority when such want of authority is made to appear in a direct attack, which is the case with the deeds issued upon certificate of sale No. 144.   See *United States* v. *Winona & St. P. R. Co.,* 67 Fed. 959 (15 C. C. A. 96.)   The act of 1878 and all subsequent legislation relating to swamp land has been with the view to prevent the acquisition of large bodies thereof by any one person, and to favor actual settlers. Such recognition of settlers' rights commenced in 1872 Laws 1872, p. 138), followed by Laws 1878, p. 49; Laws 1885, p. 131; Laws 1887, p. 9; Laws 1889, p. 100, and Laws 1899, p. 162, § 20.   And rights that were not properly initiated prior to January, 1879, were cut off by the act of 1878, and the board had no authority to recognize them or make other disposition thereof than was authorized thereby.

5. Counsel for defendant bases much of his argument upon the assertion that the board had the right to sell swamp land, but, if he means original authority, this is an erroneous assumption, even as to school lands, which, by the constitution, are placed exclusively in the hands of the board.   Its powers are limited to such as shall be prescribed by law, and, as to the swamp land, it has no authority other than such as the legislature has conferred, and for every act of the board in relation thereto statutory authority must exist.   We therefore conclude that by application No. 30 no vested rights were acquired and the lands sought to be purchased thereby were, after the 18th of October, 1878, only available under the provisions of that act.

6. It is contended by defendant, however, that certificate No. 144 was based upon an application filed by H. C. Owen prior to October 18, 1878, and therefore not avoided by that act. But what we have said as to application No. 30 applies equally to any application Owen may have made prior to the act of 1878. From his application of May 5, 1880, it appears that his prior application was filed before the survey of the land, and such an application, if made, created no contract with the State. But no such application has been shown nor that any effort had been made to comply with the law of 1870 or to make payment of the 20 per centum of the price, and therefore, if there was one, it was equally unavailing to him. It is only upon the merest inference that we are asked to find that H. C. Owen applied to purchase the lands described in certificate No. 144 prior to 1878, viz., by reason of his reference in his application of 1880 to his "original application," and by the testimony of Col. Cogswell that "we found H. C. Owen's application dated quite a while before '78," he thinks, in 1871; he does not identify its genuineness, its date, nor the lands described, nor its form, and certainly the court cannot assume therefrom an application that complies with the law for the purpose of evading the effect of the act of 1878. No two of his four applications describe the same land, but each contains more or less than the former one. His application of May 5, 1880, which purports to describe all land mentioned in his original application, contains less than 9,000 acres of the 78,000 acres described in certificate of sale No. 144, and there is nothing before us that a court can recognize as proof of an application by H. C. Owen prior to the one dated May 5, 1880. Furthermore, the State Land Board refused to recognize or receive his application or make any contract with him prior to April 3, 1884. On January 31, 1882, his application and tender of the 20 per centum of the purchase price filed

September 7, 1881, were refused for the reason that the board had not adjudged H. C. Owen to be entitled to purchase said land, and, again, his application and tender filed November 5, 1883, were refused for like reason. On April 3, 1884, his application and tender were received and acted upon as successor to C. C. Beekman and others. Therefore he had no vested right in said lands under any of his applications, and, after the enactment of 1878, the board had no authority to receive any application or payment under the act of 1870 or to sell any one person more than 320 acres, and therefore was without authority to issue certificate No. 144, and it was void.

7. Defendant relies on the statute of limitations as a bar to this suit, in that it was not brought within 10 years from the date of the deeds, also on the provision of Section 378 of the Civil Code (Section 392, B. & C. Comp.) to the effect that no suit shall be maintained to cancel a patent to lands issued by the United States or by this State unless commenced within ten years from the date of the patent. But that provision, being an amendment of that section (Laws 1878, p. 25, § 1), was by this court held to apply only to controversies arising under Section 501 of the Civil Code (Section 517, B. & C. Comp.), viz., where there was a conflict between rival claimants to a donation from the general government of the United States, or of a grant from the State. Therefore it has no application here: *Baker* v. *Woodward,* 12 Or. 3 (6 Pac. 173.)

8. This case is not covered by any of the provisions of the statute of limitations. It is a case of purely equitable cognizance. Its purpose is to procure the cancellation of deeds, valid on their face, issued by the officers of the State, whose duty it was to execute deeds for the State in cases of sales of lands, and were in due form, but issued in a case not authorized by law, and therefore cannot bind the State, but it has no remedy at law. In cases of

purely equitable rights the equity court is not bound by
the statute of limitations. If the jurisdiction is not con-
current with that of the law courts, but is exclusive, it is
not governed strictly by the limitations applicable to law
courts, but restricts or enlarges the limitations according
to the circumstances of each particular case. 16 Cyc.
180; 19 Am. & Eng. Enc. Law (2 ed.) 154; *Neppach* v.
*Jones,* 20 Or. 493 (26 Pac. 569, 849: 23 Am. St. Rep.
145) ; *Loomis* v. *Rosenthal,* 34 Or. 585 (57 Pac. 55) ;
*Hall* v. *Russell,* 3 Sawy. 515 (Fed. Cas. No. 5,943.)

9. In *Cranmer* v. *McSwords,* 24 W. Va. 594, it is said
that, where there is no legal right, the statute of necessity
has no° application by analogy or otherwise, and the case
must be determined purely by the ordinary equity rules.
Laches will bar an equity, but lapse of time alone may
not be sufficient to constitute laches. It depends upon
whether conditions have been changed, resulting in injury
to the defendant, on account of the delay. *Montgomery
Light & Power Co.* v. *Lahey,* 121 Ala. 131 (25 South. 1006) ;
*Wilson* v. *Wilson,* 41 Or. 464 (69 Pac. 923) ; *Wills* v.
*Nehalem Coal Co.,* 52 Or. 90 (96 Pac. 528) ; 16 Cyc. 161.
But in case of a forged deed, or one executed in the name
of the owner, but without authority, lapse of time without
any circumstance of ratification or approval cannot bar
plaintiff's remedy in equity for its cancellation. The
remedy sought by this suit is independent of Section 516,
B. & C. Comp., under which plaintiff must be in possession
and hold the legal title to invoke its remedy, and against
which the statute will never run while the adverse claim
or interest exists. *Meier* v. *Kelly,* 22 Or. 138 (29 Pac.
265.) That statute is not a limitation upon such suits,
but is an enlargement of equity jurisdiction to include
cases which, independent thereof, equity would not enter-
tain until plaintiff's title had been attacked.

10. Where an owner has been apparently deprived of
his title by a fraudulent conveyance or assignment which

is void, as where it was fraudulently executed in his name without any authority, expressed or implied, or where it is forged and the property by means of such transfer comes into the hands of a purchaser for value and without notice, the owner is not barred of his remedy. Equity will relieve by canceling the deed or compelling a reconveyance. 2 Pom. Eq. § 918; 4 Pom. Eq. § 1377. It is said in *Low* v. *Staples,* 2 Nev. 213:

"Independent of any statute, therefore, the plaintiff's remedy was complete in equity; and, notwithstanding Sections 254-255 (similar to Section 516, B. & C. Comp.) may be sufficiently comprehensive to embrace the remedy now sought by the plaintiff, it will hardly be claimed, we apprehend, that this statute entirely supersedes the remedy which existed independent of it. The statute gives a remedy in cases where perhaps without it none existed. For instance, if the plaintiff be in possession, he has a remedy against all persons claiming adversely, whether such claim casts a cloud upon his title or not. Thus far the old equity jurisprudence of the court is extended, but further than this we do not think it affected."

In *Pier* v. *City of Fond du Lac,* 38 Wis. 480, considering the same statute, it is said that cases frequently arise where it is essential to full relief that deeds or other instruments be canceled or reformed and "in such cases, unless the general equity powers of the court, as they existed before the statute, are available, the injured party must go out of court without full redress for the wrong he has suffered." And it is stated that the intention of the statute is to provide an easy remedy in a class of cases which are not within the general equity jurisdiction of the court. *Kennedy* v. *Northup,* 15 Ill. 148; *Booth* v. *Wiley,* 102 Ill. 113; *Bunce* v. *Gallagher,* 5 Blatchf. 481, Fed. Cas. No. 2133; *Hoopes* v. *Devaughn,* 43 W. Va. 447 (27 S. E. 251); *Carney* v. *Barnes,* 56 W. Va. 586 (49 S. E. 423); Story's Eq. Jur. § 700. The relief sought is of exclusively equitable jurisdiction and it not affected by the statute of limitations. The demurrer to the complaint

was improperly sustained, so far as it related to the deeds of date August 21, 1891, and the one of date March 23, 1893.

11. The application of R. L. McConnaughy and Martin McConnaughy to purchase 3,360 acres of swamp land described by legal subdivision was mailed on November 22, 1876, to the State Land Board, and with it was sent $208.50, and thereafter, on January 24, 1877, they paid the balance of $672, being equal to 20 per centum of the price of the 3,360 acres, at $1 per acre. Thereafter, on October 23, 1882, the McConnaughys filed an amended application to purchase 902.72 acres of the lands described in their first application, thereby relinquishing the remainder thereof, and asked to have the $672 theretofore paid, applied in payment of the purchase price of the 902.72 acres. The payment was completed and a deed issued therefor on January 18, 1883. The allegation in the complaint is that this money was sent to T. H. Cann, clerk of the board, who received it as agent of the McConnaughys, but did not pay it to the board. We cannot concur in this view. The application containing the money was made to the board, and mailed to T. H. Cann, "Clerk of the Board," who was its agent or servant and could not act as agent for persons dealing with the board, and there is no indication that the McConnaughys so intended it. Afterwards the board recognized the transaction as a payment, and gave the McConnaughys credit for it in payment upon the price of the land, which we think was right. The application and the payment of the 20 per centum of the price, having been made prior to the act of 1878, was expressly excepted from its operation. The proof of reclamation was filed August 27, 1880, being the affidavits of two witnesses to the effect that they were well acquainted with the lands; that they had been ditched and embankments and floodgates had been made thereon; that they believed said land to be in a condition to be

considered fully reclaimed within the meaning of the act
of October 26, 1870; that the land had been cultivated by
said McConnaughy in grasses for three years last past;
and that it was their belief that the land was then in a
condition to be successfully cultivated in the staple crops.
These affidavits are not proof of any specific facts show-
ing that said land had been drained or reclaimed by
such acts.  The act of 1870 provides that all swamp land
which had been successfully cultivated in either grass,
cereals, or vegetables for three years shall be considered
as fully reclaimed.  Whether the statements in the affi-
davit come within the intent of that clause of the act it is
not now necessary to decide, as, even if the affidavits are
false and fraudulent, the deed is not thereby rendered
void, but only voidable.  A deed issued by the State Land
Board, conveying land over whch it has the power of
disposition and the jurisdiction to determine the claims of
the applicant, conveys the title to the grantee whether the
decision of the board upon the facts is right or wrong,
and it is not subject to collateral attack, but it may be
assailed in equity.  67 Fed 959 (15 C. C. A. 96.)  The
State Land Board is a co-ordinate department of the State
government, analogous to the land department of the
United States, and its ruling upon matters within its
jurisdiction is final.  *Robertson* v. *State Land Board,* 42
Or. 183  (70 Pac. 614.)

12. The complaint attacks both the sufficiency and
truthfulness of these affidavits, and also alleges that the
lands were dry and were cultivated in natural grasses and
needed irrigation at the times mentioned in the said affi-
davits, and that the ditches and embankments and flood-
gates mentioned were constructed by the McConnaughys
for that purpose, and not for drainage, thus making an
issue upon the reclamation and proof of it.  This deed,
however, does not bear the same relation to the statute
of limitations or the laches of the plaintiff as the deeds of

date August 21, 1891, as, in case of the former, the board had jurisdiction of the subject-matter and authority to issue the deed. More than the statutory period of limitation had elapsed since its execution when this suit was commenced, and thus it appears *prima facie* that plaintiff is guilty of laches, such as will bar the suit, unless excuse for the delay is shown.

13. The burden of proof is upon the plaintiff to allege and prove the facts showing such excuse, how and when it came to a knowledge of the fraud, and that due diligence would not have discovered it.

14. The only allegation of the complaint upon that question is "that the fraudulent acts and representations of defendant * * were unknown to plaintiff until the month of May, 1903, and neither the plaintiff, its officers, or agents had notice or knowledge of the fraud practiced upon the State of Oregon by which defendant and its grantees obtained the deeds * * until the month of May, 1903." The sufficiency of such an allegation was before the court in *Badger* v. *Badger,* 69 U. S. (2 Wall.) 87, 95 (17 L. Ed. 836), in which it is held that the general statement that fraudulent acts were unknown to complainant until within five years past was insufficient. The complaint must set forth specifically what were the impediments to an earlier prosecution of his claim. To the same effect is 16 Cyc. 180; also 5 Pom. Eq. § 36. In *Loomis* v. *Rosenthal,* Mr. Justice MOORE quotes from *Badger* v. *Badger,* 69 U. S. (2 Wall.) 87, (17 Law Ed. 836), with approval, and further states that, "to entitle them to recover they must show that by the exercise of reasonable diligence they would have failed to discover the fraud of which they aver they were ignorant." And in the recent case of *Wills* v. *Nehalem Coal Co.,* 52 Or. 91 (96 Pac. 535) Mr. Justice SLATER, in discussing the same question says: "When, however, the suit is brought after the statutory time, plaintiff must plead and prove that laches does not

exist, and the facts must be specifically .and precisely pleaded." Therefore, as to this cause of suit, the complaint is insufficient and the demurrer was properly sustained.

15. The demurrer was overruled by the trial court as to the deed of date June 23, 1899, and the Warner Valley Stock Company filed an answer to the complaint so far as it related to that deed, which was also issued upon certificate of sale No. 144. After denying much of the complaint, it alleges affirmatively that in 1892 it purchased R. F. McConnaughy's right in said land and in 1899 paid the State the balance of the purchase price at $1 per acre, receiving the deed therefor from the State of Oregon. And for a second defense it alleges the history of the contest of the pre-emption and homestead claims had in the United States Land Office in the year 1899 at the request of the Governor, the contest finally resulting in the cancellation of all of the said homestead and pre-emption entries pursuant to the decision of the Secretary of the Interior of date March 16, 1903, and that the lands were thereupon patented to the State of Oregon; that in said contest the State requested and permitted the defendant to pay the costs of said contest, which it did; and that the State is estopped from further contesting defendant's title to said lands. On October ——, 1903, a reply to said answer was filed by the plaintiff, and thereafter the suit was tried before the court, and findings were made in favor of defendant, and decree rendered, dismissing the suit. The evidence taken at the trial establishes the portions of the complaint discussed in this opinion, upon which we hold that certificate of sale No. 144 was issued without authority and was void, and confirms us in the conclusion reached both as to the Beekman and the H. C. Owen applications, and the culmination thereof in certificate of sale No. 144, and disposes of the first defense against the defendant's contention as to the second defense. If

swamp land had been sold by the State to defendant and its grantors, possibly the Governor was authorized to request such contest against the settlers, but as to swamp lands not so sold his acts were not only without authority, but were contrary to the express direction of the legislature.

We have already referred to the acts of the legislature upon this matter. Section 1 of the act of 1889 (Laws 1889, p. 100), which was adopted after most of the settlements were made, and which settlements were undoubtedly the inducement thereto, provides:

"That all the rights and title of the State of Oregon to the swamp and overflowed lands of this State, and claimed by persons who have completed settlement thereon, or who may hereafter complete settlement under the provisions of the pre-emption or homestead laws of the United States, and shall have obtained a patent or certificate of final proof therefor, be and is hereby granted and confirmed unto such claimant, his heirs or assigns respectively."

That act precluded the Governor, the State Land Board or any other officer of the State from contesting the claims of such settlers on account of the State's interest therein by reason of its being swamp land. On the contrary, it required the board to quitclaim to such settlers. The legislative assembly of 1899 (Laws 1899, p. 162, § 20) while such contest was evidently in progress or in anticipation provided that:

"The State Land Board shall not call in question the title of any person to any swamp lands which he may have acquired by full and complete compliance with the pre-emption or homestead laws of the United States."

So that the State of Oregon was no party to such contest even if it was requested by the Governor, so far as it related to swamp land, the title to which was still in the State, and the State is not estopped from questioning defendant's title.

16. Counsel for defendant calls attention to the allegations of the complaint to the effect that the settlers named as defendants were owners in fee of the lands settled upon, and that, therefore, the State has no interest in the subject of the suit, and for that reason the demurrer must be sustained, and cites to that effect *Oregon* v. *Warner Stock Co.,* 48 Or. 378 (86 Pac. 780: 87 Pac. 534.) This question might be disposed of by saying that of the 5,288 acres described in the deed the settlers only claim 2,920 acres, and the remainder is not subject to that objection. But, regardless of the statement in the complaint that the settlers have the fee-simple title, the facts alleged show that they have not. In this proceeding it appears that these lands were selected by the State as swamp lands and patented to the State as such, and the State has directed that the lands occupied by the settlers under certain conditions be conveyed by the board to the settlers if defendant is not legally entitled thereto, and it is contended by the State that these deeds issued to defendant are void and an apparent impediment to such transfer. As stated in the opinion in *Oregon* v. *Warner Stock Co.,* 48 Or. 378 (86 Pac. 780: 87 Pac. 534), the real purpose of that suit was to cancel the patent from the United States to the State, and the questions here were not involved. The title to these lands is in the State unless the deeds here involved are valid. If they are void, then there can be no doubt about its right to to have them canceled, regardless of the rights of the settlers.

The conclusion is that the demurrer to the complaint so far as it relates to the deeds of date August 21, 1891, and the one of date March 23, 1893, will be overruled. And as to the one of date January 18, 1883, it will be sustained. And the decree on the facts as to the deed of date June 23, 1899, will be reversed. Within the purview of *Fowle* v. *House,* 30 Or. 305 (47 Pac. 787) the cause will

be remanded to the lower court for such further proceedings as it may deem proper, not inconsistent with this opinion.    AFFIRMED IN PART: REVERSED IN PART.

---

Decided May 17, 1910.

## ON PETITION FOR REHEARING.

[108 Pac. 861.]

MR. JUSTICE EAKIN delivered the opinion of the court.

17. By this motion counsel for defendant again urge that the statute of limitations bars this suit, and question our construction of section 392, B. & C. Comp. As supplementary to what is said in the opinion, we may add that there can be no doubt that our statute of limitations (sections 3-26, B. & C. Comp.) can have no application to the State, except by virtue of the provision of section 13, which has been repealed by the amendment of 1903 (Laws 1903, p. 18), and provides that the limitations prescribed in this title shall apply to the State.

18. It is a common-law maxim *"Nullum tempus occurit regi."* 1 Wood, Limitations, § 52, states that: "Except the statute otherwise expressly provides, it [the statute of limitations] cannot be set up as a bar to any right or claim of the State." Those sections of the Code only apply to sections, and section 392 provides that suits shall only be commenced within the time limited to commence actions, as provided in Chapter 2, Title 1, of this code (sections 3-26). This does not make the statute of limitations apply to suits by the State, nor does section 13 apply to suits. And the State is not barred.

19. The clause of Section 392 of the Code, which provides that no suit shall be maintained to set aside, cancel, or annul a patent to land issued by the United States or this State, unless commenced within ten years, refers to persons claiming land wrongfully patented to another

by the United States or this State.   To make it apply
to the State the statute must expressly so provide.

20. Again, defendant urges that the suit cannot be
maintained unless plaintiff is in possession of the land.
This contention is fully answered in the opinion, where
we hold that the relief sought is the subject of general
equity powers of the court, which existed prior to and
independent of Section 516, B. & C. Comp., authorizing
suits to quiet title.

21. If plaintiff is out of possession and his remedy
by ejectment is adequate, then equity will not entertain
jurisdiction to remove a cloud, but there are many *quia
timet* actions in which the remedy at law is not adequate,
and of which equity will entertain jurisdiction whether
plaintiff is in or out of possession.

22. If the relief is such that equity alone can grant,
and the remedy at law is inadequate, that is sufficient
to give jurisdiction.    This principle is recognized in
*O'Hara* v. *Parker,* 27 Or. 156, 168 (39 Pac. 1004, 1006)
where Pomeroy is quoted and approved, to the effect that
"where * * a party out of possession has an equitable
title, or where he holds the legal title under such circum-
stances that the law cannot furnish him full and com-
plete relief, his resort to equity to have a cloud removed
ought not to be questioned."   In *Hoopes* v. *De Vaughn,*
43 W. Va. 447, 452 (27 S. E. 251, 253) it is held that
"a suit in equity to annul a forged deed, * * brought
by the legal owner * * while out of possession of the
land, is not taken out of equitable jurisdiction by the fact
that the deed is void."   To the same effect are *De Camp*
v. *Carnahan,* 26 W. Va. 839, and *Bunce* v. *Gallagher,* 4
Fed. Cas. No. 2,133.   In the latter case it is held that it
is not enough that there is a remedy at law; it must be
plain and adequate.   The fact that the deed is void does
not take it out of the jurisdiction of equity.   As the inval-
idity of the deed does not appear on its face, but can

only be made apparent by extrinsic evidence, it is the duty of equity to sweep it away. And the question of possession has no legal relation to the object now sought to be attained. Story's Eq. Jur. § 700; 17 Ency. Pl. & Pr. 284. In *Booth* v. *Wylie,* 102 Ill. 84, it is held that the rule that a bill to quiet title to remove a cloud upon a party's title lies only when the complainant is in possession of the land applies only when the object of the bill is purely to remove a cloud from the title, and not where the primary relief sought is upon other and well-established grounds. The rule has no application when a deed is sought to be set aside upon the ground of fraud. In *Pier* v. *City of Fond du lac, Imp.,* 38 Wis. 470, 481, it is said:

"In those actions *quia timet,* which may be brought independently of the statute, we find no authority for holding that possession by the plaintiff is essential to the cause of action; and, unless an averment of such possession is necessary to show that the plaintiff has no adequate remedy at law, no valid reason is perceived why it should be required."

23. In 4 Pomeroy Eq. Jr. § 1377, it is said a doubt was formerly entertained as to whether a court of equity ought to exercise its jurisdiction to order instruments, absolutely void at law and not merely voidable, to be delivered up and canceled, since the legal remedy of a party was adequate. But it is now well settled that jurisdiction will be exercised in such cases, except where the invalidity of the instrument is aparent on its face; and in a note to Section 1399 he says, that when the interest to be protected is equitable, the jurisdiction should be exercised whether the plaintiff is in or out of possession; for under those circumstances legal remedies are not possible. In *Kennedy* v. *Northup,* 15 Ill. 148, 152, the bill was filed for the purpose of setting aside certain deeds alleged to be fraudulently obtained. It was objected that defendant was in possession, and that therefore plaintiff could not maintain the suit. The court said:

"We think the complainant has a right to have the defendant's title set aside, * * although it may be true that the fraud, if proved, might defeat that title in a court of law, yet the courts of equity have ever claimed to possess superior facilities for investigating such questions to the courts of law, and certainly the relief which they can give is, in many cases, more satisfactory. When the fraud is once established, they can cut up the fraudulent conveyance or contract by the very roots, and leave the party in as secure a position as if it had never existed."

As said in *Bunce* v. *Gallagher*, 4 Fed. Cas. No. 2, 133, there is no question of title involved in this suit, except that involved in whether the deeds are void; their invalidity does not appear on their face, but can only be made to appear by extrinsic evidence, and the question of possession has no legal relation to the object now sought to be attained.

Again counsel urge that, in ruling upon the demurrers, the court has taken into consideration facts disclosed on the trial as to the deed of date June 23, 1899, but the facts disclosing the invalidity of the deeds are set out in the complaint, viz., that H. C. Owen received no recognition from the board until he acquired the rights of Beekman and others under application No. 30, when he filed his own application of date March 12, 1884, to which was attached application No. 30, upon which certificate No. 144 is based, and recites that it is issued to H. C. Owen, successor to C. C. Beekman and others, and this precludes any inference that certificate No. 144 may have been issued upon applications for not more than 320 acres each. It is expressly alleged that the deeds were issued under and in accordance with certificate of sale No. 144, and the decision here is not in conflict with the opinion in *Warner* v. *Morrow*, 48 Or. 258 (86 Pac. 369).

In remanding the case to the lower court, we had in mind that all parties would prefer to have the whole case await the final decree as to all the deeds. And the pro-

ceedings in the trial court are subject to the control of
that court. As to the deeds of date August 21, 1891, and
the one of March 3, 1893, no doubt the defendant is
entitled to have leave to answer. As to the deed of date
January 18, 1883, it is for the lower court to determine
whether the plaintiff should be allowed to amend; and,
as to the deed of date June 23, 1899, findings are made
by this court in favor of plaintiff. But since plaintiff, by
the complaint offers to reimburse defendant Warner Val-
ley Stock Company, for all sums of money paid by it and
its predecessors in interest to the State upon the attempted
purchase, which in equity and good conscience it ought to
do, an accounting must be had thereon, and the decree
rendered accordingly.

The motion for a rehearing is denied.

AFFIRMED IN PART: REVERSED IN PART: REHEARING
DENIED.

---

Argued Feb. 2, decided April 13, 1909; rehearing denied May 17, 1910.