Johnson, J.
The first contention of the plaintiff in error is that the court of appeals, on the trial of the case on appeal, was bound to follow the finding and judgment of the court of appeals which had theretofore been entered in the second proceeding in error.
It is insisted that the findings included in the entry of that judgment, and the judgment itself, were conclusive.
As shown in the statement, the court of appeals in its entry, on second trial of the case, found that *256 the superior court had erred in admitting the entries in the stock ledger in evidence; and it also included certain findings of fact as to continuous ownership of the thirty shares of stock since 1865 in favor of the administrator. The entry then proceeded: “It is therefore considered, ordered and adjudged by this court that the judgment rendered by the court below be reversed and held for naught, and that the plaintiff in error recover his costs herein expended, taxed at $.........” And the court further ordered that the cause be remanded to the superior court for such further proceedings in accordance with the above findings as are authorized by law.
Section 6, Article IV of the Constitution, as amended in 1912, confers jurisdiction upon courts of appeals to review, affirm, modify or reverse the judgments of courts of common pleas, superior courts and other courts of record within the district, and it is well settled by the decisions of this court that the general assembly has no power to enlarge or limit the jurisdiction conferred by the constitution, but may provide by law for the method of exercising that jurisdiction. Cincinnati Polyclinic v. Balch, 92 Ohio St., 415, and Wagner v. Armstrong, 93 Ohio St., 443.
Statutes providing the method of procedure in the court of appeals, which were passed before or which have been passed since the constitutional amendment, .are effective, in so far as they do not differ therewith.
Section 12247, General Code, conferred jurisdiction on the circuit court to reverse, vacate or modify the judgments of the common pleas or superior *257 court for errors of record, and Section 12272, General Code, provided that whenever a judgment or final order is reversed in whole or in part in the common pleas, circuit or supreme court, the reviewing court shall render such judgment as the court below should have rendered, or remand the cause to that court for such judgment.
In proceedings in error the court of appeals has not, nor did the old circuit court have, authority to make findings of fact from a record which discloses a variety of circumstances or questions of fact from which different inferences or conclusions of fact may be drawn from the matters in evidence. In such a case the jurisdiction of the court of appeals is confined to the adjudication of errors appearing on the record of the court below, and if it finds error of law, or that the judgment of the trial court is against the weight of the evidence, its duty is to reverse that judgment and remand the cause to that court for a new trial. The judicial article of the Constitution as amended in 1912 carefully safeguarded the jurisdiction of the trial courts as to facts by providing that no judgment of the court below should be reversed on the weight of the evidence except by the concurrence of all the judges.
The whole matter is well and concisely stated in Gilson v. Carrel, 79 Ohio St., 433, where this court said in its entry:
“This court being of opinion that the circuit court, in an eiror case, has not power to make a finding of facts which calls for review by this court, or conclusively binds the court of common pleas, *258 nor to render final judgment except in case of a finding of controlling facts by the trial court, or they are conceded, but this court being further of opinion that the reversal of the judgment of the court of common pleas as shown by the judgment entry of the circuit court, should be treated by this court as a reversal upon the weight of the evidence.
“It is considered and adjudged that the judgment of the circuit court be and the same is modified in this to-wit: As to the finding of facts and final judgment thereon, the same is reversed; as to the reversal of the judgment of the court of common pleas the same is affirmed, and the cause is remanded to the Court of Common Pleas.”
In Minnear v. Holloway, 56 Ohio St., 148, it is held: “Where the controlling facts in a civil action are conceded by the parties in their pleadings or evidence, or both combined, without conflict as to any material fact, so that the error of the court lies in the application of the law to such facts, a higher court after reversing the judgment for such error of law, may proceed and render such judgment as the court below should have rendered upon such facts, or remand the cause to the court below for such judgment.”
In Cavey, Admx., v. Iliff et al., 84 Ohio St., 456, the circuit court reversed the judgment of the common pleas court on the ground that it erred in overruling the motion of the defendants at the conclusion of the evidence to arrest the case from the jury and enter final judgment in the case. This court reversed the final judgment and remanded the cause for a new trial. The entry was as follows:
*259 “This court, finding from the record that the judgment of the circuit court is in effect an adjudication that the judgment of the court of common pleas is against the weight of the evidence, the judgment of reversal is affirmed. But this court being of opinion that the cause should be submitted to a jury, the final judgment rendered by the circuit court is hereby reversed.” This holding was approved in Stugard, Admr., v. P., C., C. & St. L. Ry. Co., 92 Ohio St., 318, 323. To the same effect are Hickman v. Ohio State Life Ins. Co., 92 Ohio St., 87; Gay, Exrx., v. Davey, 47 Ohio St., 396; Stivers v. Borden, 20 Ohio St., 232; Miller v. J. T. Sullivan & Co., 26 Ohio St., 639, and Vignola v. N. Y. Cent. Rd. Co., ante, 194.
As above stated the court of appeals in the error cases held that the stock ledger was inadmissible in evidence, and on the hearing of the case on appeal the court followed that holding. In the view we take of the case it is not necessary to determine that question, and no opinion is ^expressed concerning it here. In that posture, of the case the vital and decisive issue was that of laches.
All the circumstances connected with the transactions and relations between the parties, the attitude of the decedent and the bank toward the stock during a long period of time, and all of the other facts shown by the evidence, disclosed a variety of circumstances from which it was the duty of the trial court to find the. ultimate conclusions of fact. And it was the duty of the court of appeals on error to pass upon the weight of the evidence in support of that conclusion, as well as upon errors of law.
*260 The court of appeals itself in the error proceeding seems to have also had this view. In its opinion filed in the case, after stating that counsel for plaintiff in error had asked the' court to render final judgment, the court says:
“This court is of the opinion that it is the duty of the court below upon the hearing of the evidence, to enter such a judgment as the evidence warrants; and this will probably involve the question of an'accounting, and evidence may have to be taken upon that branch of the case. Evidence may also have to be taken as to the value of this stock as of the time it was alleged to have been converted, or at the time of the trial. Evidence may also have to be taken as to other questions which we do not now perhaps foresee; and for this reason we deem it proper to reverse this judgment and remand the cause to the superior court for such proceedings as are authorized by law.”
This court overruled a motion for the certification of the record in the error proceeding. The reason does not appear, but from the above portion of the opinion of the court of appeals it will be seen that this court may have then, as now, considered that the cause should be and would be heard on its merits in the trial court.
In 15 Ruling Case Law, at Section 327, it is said:
“While it is well settled that a judgment cannot be questioned collaterally for an error committed in the- exercise of jurisdiction, the rule is equally well established that a judgment may be attacked in a collateral proceeding for error in assuming jurisdiction. Even where a court has jurisdiction over *261 the parties and the subject matter, yet if it makes a decree which is not within the powers granted to it by the law of its organization, its decree is void.”
In State, ex rel. Sheets, v. Toledo Home Telephone Co., 72 Ohio St., 60, it was held that “In a proceeding instituted in the probate court by a telephone company, under the provisions of section 3461, Revised Statutes, which authorize and require the court to direct in what mode such telephone company may construct its lines along the streets, alleys and other public ways of a city or village, the court has no jurisdiction, as a part of its order, to prescribe or determine the rates to be charged citizens of the municipality for the use of the telephones, and so much of the order as undertakes to determine such rates is void for want of jurisdiction,” and “In an action in quo warranto to oust the telephone company from the use of the streets, alleys and other public ways in the mode directed by the probate court, on the ground that such company has established rates for the use of its telephones exceeding those prescribed by the court, on the application of the company, the latter is not estopped from questioning and denying the jurisdiction of that court to prescribe the former or any .rates.” And see Scobey v. Gano, 35 Ohio St., 550, and Spoors v. Coen, 44 Ohio St., 497.
In United States, to the use of Wilson, v. Walker, 109 U. S., 258, it is said at page 266: “The court was therefore without power to direct the payment of the money to the administrator de bonis non. Although a court may have jurisdiction over the parties and the subject-matter, yet if it makes a de *262 cree which is not within the powers granted to it by; the law of its organization, its decree is void.”
In Standard Oil Co. of Indiana v. Missouri, on Information of Hadley, Atty. General, 224 U. S., 270, it is said, at page 281: “ ‘Though the court máy possess jurisdiction of a cause, of the subject-matter, and of the parties, it is still limited in its modes or procedure, and in the extent and character of its judgments.’ ”
But it is urged that the decision of the court of appeals in the error case became the law of the case and binding on the parties as such. Many authorities are cited in the briefs of counsel touching this question, and it is contended by the plaintiff in error that a prior decision is conclusive upon a subsequent appeal of a case in the same court, even if it is erroneous, and that propositions of law once decided there are not open for reconsideration in that court.
In the first place it must be observed that this rule presumes that the court which made the prior decision must have had jurisdiction to make it, and that, if so, even though erroneous, it would be followed in the later proceedings in the case before that court.
In Messenger v. Anderson, 225 U. S., 436, the general rule now prevailing is well stated, viz: “In the absence of statute, the phrase ‘law of the case/ as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to open what has been decided — not a limit to their power.” See King v. West Virginia, 216 U. S., 92; Remington v. Central Pacific *263 Rd. Co., 198 U. S., 95, and Great Western Telegraph Co. v. Burnham, 162 U. S., 339. To the same effect is Pennsylvania Co. v. Platt, 47 Ohio St., 366.
In the case we have here it must be remembered that there is a vital difference between the former and the last proceeding in the court of appeals. The former proceeding was in error and the court had only the limited jurisdiction conferred upon it. The later proceeding was on appeal. In Ohio this vital difference is no longer merely statutory, but is created by the constitution itself. The constitution as amended in 1912 confers upon the court of appeals plenary appellate jurisdiction in the trial of chancery cases. Differing from many states, and from England, where appeal is in the nature of a writ of error, and where the appellate court must confine its adjudications to errors appearing on the record of the court below, in Ohio when a chancery case is appealed it no longer remains in the court below, the judgment of the court below is vacated and the whole case goes up for trial de novo.
The appellate court has the same jurisdiction of the subject-matter of the action, of the pleadings, and the final determination of the case as the court below had. Grant, Survivor of Stone, v. Administrator of Ludlow, 8 Ohio St., 1; Mason v. Alexander, 44 Ohio St., 318, 327, and Barnes v. Christy, ante, 160.
To hold that a court of appeals in an error proceeding may make a finding of facts from the record of the trial court which shall be conclusive, or -that it may render final judgment where the controlling facts are not undisputed and no finding of them *264 has been made by the trial court, would be to set aside and disregard the express terms of the constitution by which the jurisdiction of the court of appeals is granted.
As shown in the statement of this case, the court of appeals on the trial of the case on appeal made a finding of facts from the evidence introduced before it, and concluded from the facts that the plaintiff’s administrator’s right of action was barred by laches; that the equities were with the defendant and the plaintiff was not entitled to relief.
In substance the findings were: In 1865 the elder Russell became the owner of the stock; dividends were paid to him semi-annually in 1865 and 1866, and never afterwards.' He resided in Linwood, Hamilton county, Ohio, until the summer of 1889, when he moved to Portland, Oregon, and lived there until his death in 1895. He was in straitened circumstances, was poor and supported by hi»s sons up to the time of his death. No administrator was appointed, but in the summer of 1911, sixteen years after his death, the plaintiff administrator found “among some worthless papers of his decedent a certificate for thirty shares of the capital stock of the defendant uncanceled.” Plaintiff was then appointed administrator, made demand on the bank for a new certificate, and for an accounting of dividends, which was denied, and suit was then brought. The book of certificates issued prior to 1872 has been lost since the defendant moved its place of business in 1906, and all transfers of stock have been made on the stock-ledger as *265 the book of original entry. Dividends* oil me bank stock were declared after 1866, notice of which was occasionally given in the Cincinnati papers, but no dividend was declared payable to Russell, because he was not a stockholder of record after that year, and Russell never made any demand for any dividends after 1866. The court found that the preponderance of the evidence did not show that Russell actually knew of the transfer of this stock. During twenty-eight years from 1867 to 1895, plaintiff’s decedent, “though in want, made no effort to assert any rights against the bank as a stockholder.” All who were officers of the bank at the time the transfer of stock was made have died. All of the books of account and records of the bank in use in 1867 have been lost or destroyed, prior to the death of plaintiff’s decedent, except the Minute Book, the book showing receipts for dividends, and the stock ledger. Between July, 1866, and July, 1867, the thirty shares of stock of the defendant, held by plaintiff’s decedent, were transferred on the books of the defendant from the name of the plaintiff’s decedent. At no time since the organization of the bank has there been any overissue of the stock of the bank, and all stock has been issued and outstanding since July, 1866.
This is a proceeding in equity, and it is a familiar doctrine that without reference to any questions of statutory limitation, courts of equity will discourage laches and delay in the enforcement of rights.
Bouvier defines laches:
“Unreasonable delay; neglect to do a thing or to seek to enforce a right at a proper time. * * *
*266 “The neglect to do what in law should have been done, for an unreasonable and unexplained length of time and under circumstances permitting diligence. * * *
“Unlike a limitation, it is not a mere matter of time, but principally a question of the inequity of permitting the claim to be enforced.”
In Harris v. Wallace Mfg. Co., 84 Ohio St., 104, with reference to this question it is said: “If this point -is well taken the others need not be examined further. To this point the oft-approved statement of Lord Camden in Smith v. Clay, 3 Bro. C. C., 640, is appropriate: ‘A court of equity which is never active in relief against conscience or public convenience has always refused its aid to stale demands where a party has slept upon his rights and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith and reasonable diligence.’ Indeed the fundamental truth has found a condensed expression in the familiar maxim, equity aids the vigilant, not those who slumber on their rights. The restraining influence of that maxim may be seen throughout the administration of equitable relief. It regards the just and important considerations that rights should be asserted before lapse of time may have added to the difficulty and uncertainty in judicial inquiry, and before acquiescence may have encouraged the adverse party to so change his position with respect to the subject that the enforcement of the right would impose unnecessary loss or hardship upon him.”
*267 In 10 Ruling Case Law, 396, it is said: “Its object is in general to exact of the complainant fair dealing with his adversary, and the rule was adopted largely because after great lapse of time, from death of parties, loss of papers, death of witnesses, change of title, intervention of equities, or other causes there is danger of doing injustice, and there can be no longer a safe determination of the controversy.”
These principles are singularly applicable to the case we have here, and they are everywhere recognized as sound. Hammond v. Hopkins, 143 U. S., 224; Foster v. Mansfield, Coldwater & Lake Michigan Rd. Co., 146 U. S., 88, and Naylor v. Foreman-Blades Lumber Co., 230 Fed. Rep., 658.
The plaintiff’s decedent of course knew that originally he was the owner of the stock in the bank. It was an active and substantial enterprise in the community. The federal statute required the publication in the newspapers four times a year of a report showing the assets and liabilities of the bank. It must be presumed that Mr. Russell knew stockholders’ meetings of the bank were held as required by law and that he was entitled to acquire full information as to the company’s condition. From 1867 to 1889 he lived in Cincinnati and asserted no rights against the bank, yet he then moved across the continent to Portland, Oregon, without making any inquiry or claim concerning the stock, or any dividends in the bank, and for sixteen years after his death none of his sons, who had supported him in his old age and need, knew anything about any *268 claim upon the stock. The certificate bore upon its face the statement that the stock was transferable only upon the surrender of the certificate duly signed, and it is true that the court of appeals found that it was not established by the preponderance of the evidence that Mr. Russell knew that his stock had been transferred to Mr. Colburn. But we think it is clear that the court of appeals was fully justified in finding that the plaintiff’s right of action was barred by laches and that the equities of the case are with the defendant. Mere ignorance in the absence of a reasonable diligence will not excuse the remarkable and absolutely unexplained delay here admitted.
Silence and failure to assert one’s right for almost half a century, until all persons who were connected with the transactions in question and who would naturally be able to explain and defend the conduct of the bank have passed away, and until after the records have been lost, would seem to constitute a set of circumstances of impelling force upon a court of equity to enforce the doctrine of laches. Plaintiff has not by his pleadings, or by any evidence, offered any explanation of the great delay in asserting the rights claimed. Where delay exceeds the time fixed for suit at law by an analogous statute of limitations, the burden is on the plaintiff to explain the delay and to show that it would be inequitable to enforce the doctrine of laches. Horton v. Stegmyer, 175 Fed. Rep., 756, and Wilson v. Plutus Mining Co., 174 Fed. Rep., 317.
*269 In the 4th Edition of Pomeroy’s Equity Jurisprudence, page 3449, Section 1457, it is said: “The party who appeals to the conscience of the chancellor in support of a claim, when there has been laches in prosecuting it, or long acquiescence in the assertion of adverse rights, should set forth in his bill, specifically, what were the impediments to an earlier prosecution of his claim, how he came to be so long ignorant of his rights, and the means used by the respondents to fraudulently keep him in ignorance; and how and when he first came to a knowledge of the matters alleged in his bill; otherwise the chancellor must refuse to consider his case, on his own showing, without inquiring whether there is a demurrer or formal plea of the statute of limitations contained in the answer.” , In the notes it is said: “This paragraph of the text is cited in Boyd v. Northern Pac. R. Co., 170 Fed. 779; State v. Warner Valley Stock Co., 56 Or. 283, 106 Pac. 780, 180 Pac. 861; Ruckman v. Cox, 63 W. Va., 74, 59 S. E. 760.”
We regard this as an important feature of the case.
In such a case it is not that a party has waived his right, or that he has estopped himself, but that he does not present such a case as will call forth the chancery powers of the court.
The terms “estoppel,” “waiver” and “laches” are sometimes inaccurately treated as interchangeable.
A waiver is an intentional relinquishment, either expressly or constructively, of a known right. An estoppel arises when one is concerned in or does an *270 act which in equity will preclude him from averring anything to the contrary, as where another has been innocently misled into some injurious change of position. Laches is not an affirmative, but a negative thing. It is neglect to assert a right under such circumstances and for such a length of time, as, when not induced by fraud, or otherwise shown to be justified, will lead a court of equity to refuse its aid.
In the view we have thus taken of the case, it is not necessary to examine .the other questions suggested.
Judgment of the court of appeals will be affirmed.

Judgment affirmed.

Wanamaker, Robinson, Jones and Matthias, JJ-, concur.
Hough, J., dissents.
Marshall, C. J., was not present and took no part in the consideration or decision of the case.